COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS, Patrick H. Morrison, claimant.

Worcester.    Sept. 29. — Oct. 22, 1885.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

A warrant, under the Pub. Sts. *c.* 100, § 30, to search a certain building, "and the outbuildings within the curtilage thereof," does not authorize the search of another building, not in the same enclosure with the one specifically mentioned in the warrant, but separated from it by a narrow passageway, the top of which is covered by rough boards, each building and the passageway having a separate entrance from the street.

COMPLAINT, on the Pub. Sts. *c.* 100, § 30, to the Second District Court of Eastern Worcester, alleging that, on August 8, 1884, certain intoxicating liquors were kept and deposited by Patrick H. Morrison in a certain building in Clinton, with intent to sell the same unlawfully in this Commonwealth ; and praying for a warrant to search said premises.   In the Superior Court, before *Bacon*, J., said Morrison appeared and claimed the liquors seized under the warrant issued upon the complaint. The jury found against the claimant ; and he alleged exceptions.   The facts appear in the opinion.

*J. W. Corcoran & H. Parker*, for the claimant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

DEVENS, J.   The complaint and warrant described the premises to be searched as "a certain building, the cellar under the same, and the outbuildings within the curtilage thereof, situate on the southwest corner of Grove and Beacon streets, so called,

in said Clinton, and occupied by said Patrick H. Morrison as a store, dwelling-house, and place of common resort kept therein."

The premises actually searched consisted of a basement under a building at the corner of Grove and Beacon streets, a covered passageway, by which access was had to a basement under another building, and the latter basement. These buildings were conveniently known at the trial as A and B, and it was in the basement of the latter that the liquors claimed were seized. A small quantity was seized, which was found in the passageway; but we do not understand that this is here in controversy. If so, the description of the premises would be clearly sufficient to include this passageway, and would justify the seizure of the liquors there found, as this was certainly an outbuilding immediately connected with the building A.

It was ruled at the trial that "the complaint and warrant covered both of said buildings." The correctness of this ruling depends on the inquiry whether these buildings could be held to be so connected and identified each with the other as legally to constitute but one, or whether the building called B could be held, by legal intendment, from its nature, situation, and use, to be an outbuilding to A.

The buildings A and B had each distinct access to their basements from Beacon Street. The upper portions of each were approached from Grove Street on a level by reason of the different grade of this street, which was higher than that of Beacon Street. The building A was approached directly therefrom, while B was approached therefrom by passing around the south end of A. The stories of each building above the basement were occupied by several tenants other than the occupant of the basement. There was a retaining wall about eight feet from Beacon Street in the space between the two buildings, extending from one to the other, which supported the land on the Grove Street side. A passageway, one side of which was formed by this wall and the other side and the roof of which were made of rough boards, and which was also provided with an entrance on Beacon Street, extended from A to B. With the distinct modes of access, use, and construction described, the fact that they were connected by this passage could not make of them the same

building, so that B could be held to be the building described as at the corner of Grove and Beacon streets. Nor could it be held to be "an outbuilding within the curtilage thereof." "Curtilage" has been heretofore defined to be the fence or enclosure of a piece of land around a dwelling-house, usually including the buildings occupied in connection therewith. *Commonwealth* v. *Barney*, 10 Cush. 480. There was, in this case, no common enclosure within which the two buildings stood, nor was the building itself of that class ordinarily understood as an outbuilding, which is one that, from its character, is to be used in connection with the main building, and may thus be held to be a parcel thereof, even if not immediately attached thereto, as the barns, sheds, and wood and store houses belonging to a dwelling-house. In all respects adapted for independent use, and actually thus used, except so far as the basement was concerned, the building B was not made, nor could it properly be described as, an outbuilding, because a rough passageway, temporary in its structure, afforded access to it from A. The instruction of the learned judge was on this point, therefore, erroneous.

*Exceptions sustained.*