MARGARET J. SANFORD, complainant-appellant,

v.

ERNEST F. KEER, defendant-respondent.

[Submitted December 11th, 1911.   Decided April 26th, 1912.]

1. A restrictive covenant in a conveyance of a part of a tract of land, beneficial to the value or use of the remainder of the tract, will be enforced in equity in favor of the covenantee owning such remainder, against the covenantor's grantee, with notice of the covenant, of the restricted part.

2. The right of such covenantee to enforce the unmodified portion of the covenant is not defeated by the fact that it with other like covenants imposed upon neighboring lots, form a general or neighborhood scheme which has been modified by the elimination of some of the prohibitive provisions thereof by general consent or acquiescence, in a manner, however, not destroying the essential mutual benefit enjoyed by the lot owners from the general scheme, nor the benefit to the covenantee's remaining property to be derived from performance of the covenants of the general scheme as so modified.

3. Where a tract of land is divided into building lots and a plan exhibited showing to prospective purchasers the streets and lots thereof, and such purchasers are induced to buy the lots by and in reliance upon representations, either public or private, that all conveyances would contain protective restrictions of a designated character and purpose, the restrictive covenants inserted in the conveyances of the lots in accordance with these representations constitute a general or neighborhood scheme and may be enforced between the lot purchasers inter sese.

4. In a general or neighborhood scheme the burden follows the benefit, and where by reason of abandonment, acquiesced-in violation, change of character of the neighborhood, or other sufficient cause, the benefit to the property owners affected by the scheme is totally or partially destroyed or impaired, the accompanying burden undergoes a corresponding modification.

5. Where by reason of a change of the character of a neighborhood the enforcement of a restrictive covenant would be a burden upon the restricted property without conferring any benefit upon the property of the covenantee, equity will refuse relief, but where the change does not conflict with the essential purpose of the covenant and the benefit therefrom remains unimpaired, a violation will be enjoined.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

The complainant and her husband (who is now deceased and whose share has passed to her) were the owners, by the entirety, of a tract of land on the north side of Clinton avenue, in the city of Newark, which they laid out into building lots, opening up streets (Shanley, formerly Sanford, avenue, South Tenth street and South Eleventh street, running north and south, and Madison avenue, running east and west) through it, and of which they prepared a plan showing the streets and the building lots thereon. They sold a very large portion of these lots and conveyed them to the respective purchasers under and subject to express restrictive covenants against their use for other than residential purposes and providing for improvements of a character indicated by the terms of the covenants, which terms varied somewhat in the different sections of the tract, apparently in accordance with the class of improvements intended to be promoted in each section. All the lots sold, however, were restricted for residential purposes and dwelling-house improvements of one class or another. The original mansion-house portion of the tract, where complainant and her husband lived when the sales took place and where she still resides and which she now owns, occupies nearly the entire block on the west side of South Tenth street from Clinton avenue to Madison avenue, and the lots, nine in number, on the opposite (or easterly) side of South Tenth street in this block (including the lot in question now owned by defendant) have all been sold (except one which complainant still owns) and conveyed, subject to the express restrictive covenants that the grantee, his heirs and assigns, will not erect, suffer or permit to be erected thereon within a period of fifty years any building whatsoever other than a private dwelling-house, such private dwelling-house to be used only as and for a private residence and for one family only; that it should set back from the street line thirty feet to the piazza line, or thirty-nine feet to the main building (except the one on the corner of Madison avenue which had to set back forty-two feet), and that it should cost at least $5,000, in all cases except two, one of which, that of the first lot sold, specified $4,500 as the minimum cost, and the other, the corner, $12,000 as the minimum cost of such dwelling-house. In addition to these pro-

16

visions, which were contained in the deeds for each of the eight lots sold in this block, and, in the same or a modified form somewhat varying seemingly to suit different sections, were common throughout the entire tract, there appeared in the deed for four of the lots (including that of defendant) in the block in question, an additional restriction against stables or outbuildings of any description, whereas in the deeds for three other of these lots there is coupled with the restriction for the dwelling-house, permission for necessary or appropriate outbuildings, and in the case of the corner lot a private garage is expressly permitted upon the rear end of the lot farthest from South Tenth street. The evidence shows that private garages have also been constructed upon the rear end of two of the other lots in this block upon which dwelling-houses in accordance with the restrictive covenants had been constructed, and in one of these instances there is evidence that complainant consented to the insertion of the clause "together with necessary outbuildings" to enable the purchaser to erect a private garage in the rear of his lot for use in connection with his dwelling-house thereon, because he refused to buy unless this were permitted.

The defendant owns a lot fronting on South Tenth street and directly opposite the mansion-house owned and occupied by complainant as aforesaid and about the middle of the block in question, which lot he bought from one Weston, a grantee from complainant and her husband by a conveyance containing the following restrictive covenant:

"That the said party of the second part, his heirs and assigns, shall and will not at any time prior to the first day of April, 1955, erect, suffer or permit to be erected on the lands above described and hereby conveyed or on any part thereof any building whatever other than a private dwelling-house, which said dwelling-house shall be used only as and for a private residence and for one family only and for no other purpose whatsoever; that no part of said dwelling-house, except the piazza, shall be erected or placed within thirty-nine feet to the curb line of the street in front of said premises above described and hereby conveyed, and that the said party of the second part, his heirs and assigns, will not erect or permit to be erected on the premises hereby conveyed, prior to April 1st, 1955, any dwelling-house costing less than $5,000, which said dwelling-house shall be erected and completed in a good workmanlike manner. It is also hereby further stipulated and expressly agreed by and between the parties hereto, their heirs and assigns, that no stable or outbuilding

at any time hereafter shall be erected or placed on the premises above described and hereby conveyed, and that the grade of said lot shall be made to correspond to the grade of the lots adjoining the lot hereby conveyed on which dwellings are now erected, and that the above restrictions and each of them shall run with the land hereby conveyed, the same having been computed as a part of the consideration of this conveyance."

Defendant has constructed a garage, not upon the rear of his lot, but in substantially the exact location (forty feet from the curb line) thereon, specified by the restrictive covenant for a dwelling-house; he has not constructed any dwelling-house on this lot, but resides in a dwelling-house on another lot which he owns, fronting on Shanley avenue and abutting up to the lot in question in the rear, and he uses the garage in connection with his dwelling-house on said other lot.

The bill was filed promptly upon the commencement of the building of the garage, a restraining order was applied for and refused, and the defendant proceeded with and completed the garage at his peril. Upon final hearing, a decree was entered refusing the injunction prayed for and dismissing the bill, and the present appeal is from that decree.

*Mr. Frank E. Bradner,* for the complainant-appellant.

*Messrs. Raymond, Mountain, Van Blarcom & Marsh,* for the defendant-respondent.

The opinion of the court was delivered by

WHITE, J.

The complainant in her bill expressly repudiates any general or neighborhood scheme of restrictive covenants, and bases her prayer for relief upon the individual and particular covenant (above recited in full) entered into with her by defendant's vendor and appearing in his chain of title. It is beyond question and is admitted that what defendant has done is a clear violation of the terms of this covenant and that he purchased with complete notice of these terms. Under these circumstances standing alone, it is too well settled to require discussion, that

complainant (whose remaining property still owned by her is clearly injured by the breach) is entitled in equity to enforce performance of the covenant against the defendant. *Tulk* v. *Moxhay*, *2 Phill. 774; Coudert* v. *Sayre, 46 N. J. Eq. (1 Dick.) 386; Hayes* v. *Waverly and Passaic Railroad Co., 51 N. J. Eq. (6 Dick.) 345,* and other cases too numerous to mention.

The defendant on the other hand invokes in defence two principles, which, if substantiated by the facts, are almost, if not quite, equally well settled.

The first is, that the covenant in question formed part of a general or neighborhood scheme, and that this scheme in so far as it is involved in this violation, has been abandoned by mutual consent and acquiescence of all parties in interest, including the complainant, not only by permitted violations of its requirement in several cases where it did appear in the covenants, but by its entire omission from the covenants upon some of the lots and the substitution in place of it of express consent to such violation. This point, if applicable to the facts, is fatal to the relief asked by complainant. In a neighborhood scheme *the burden follows the benefit.* It is the mutual benefit accruing to all and to each which makes it inequitable for anyone so benefited to repudiate the burden to the injury of the others. If, therefore, the parties in interest by express act or passive acquiescence permit such violations of the plan or scheme as destroy wholly or partially the benefit therefrom, they have to a corresponding extent absolved each other from its burdens. Thus, in *Roper* v. *Williams, 1 Turn. & R. 18,* Lord-Chancellor Eldon said: "Having lived in Gower street, I have often been in the habit of illustrating my view of such cases by reference to the stipulations contained in the Duke of Bedford's lease. In the lease of the houses on the east side of that street is contained a covenant that there shall be no erection behind them exceeding a certain height. The landlord in such a case is stipulating, not only for his own benefit, but for the benefit of all the tenants in that neighborhood. If, therefore, the landlord in some particular instance, lets loose some of his tenants, he cannot come into equity to restrain others to whom he has not

given such license, from infringing the covenant. He may have a good case for damages at law; but, if he thinks it is right for him to take away the *benefit of his general plan* from some of his tenants, he cannot, with any justice, come into equity for an injunction against those tenants. It is not a question of mere acquiescence; but in every instance in which the grantor suffers grantees to deviate from the general plan intended for the benefit of all, he deprives others of the right which he had given them, to have the general plan enforced for the benefit of all." In *Peek* v. *Matthews, L. R. 3 Eq. Cas. 515,* it was said: "The vendor in such cases, stipulating *for the benefit* of himself and others, as a *quasi*-trustee for them, is bound to enforce the covenant as much against one as against the other." See, also, *Ocean City Association* v. *Headley, 62 N. J. Eq. (17 Dick.) 322,* and *Trout* v. *Lucas, 54 N. J. Eq. (9 Dick.) 361.*

Turning now to the present case, the vice-chancellor found as a fact that the restrictive covenants contained in the deeds from complainant and her husband for the various lots of this tract which were sold, constituted a general or neighborhood scheme, and an examination of the evidence completely confirms this view. There was a plan of the lots with the streets and avenues laid out thereon exhibited to the purchasers, who were induced to buy by representations that the value of their proposed improvements would be protected by the fact that restrictions were placed on all lots as sold, and the nature and provisions of these restrictions were explained to them according to the particular section in which they proposed to purchase. It is difficult to see how these representations could be made for the purpose of inducing the proposed purchasers to pay higher prices for the lots because of their protected condition, unless it was intended that this protection should inure to the benefit of the purchasers of the lots so protected, and that is the exact test which decides in favor of a general or neighborhood scheme. *De Gray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. (5 Dick.) 329, 338.*

It is true that these restrictions varied in different sections in accordance with the designs of the promoters for the character of such sections, respectively, but this does not interfere with the integrity of a neighborhood scheme. Under such circumstances,

the covenants applicable to each section become, to a certain extent, a separate scheme for that section, the various covenants on the different sections forming a general scheme for the whole, only in so far as all contain features common and beneficial to all. *Morrow* v. *Hasselman, 69 N. J. Eq. (3 Robb.) 612.*

What, then, was the essential and beneficial neighborhood scheme for the lots on the east side of South Tenth street between Clinton and Madison avenues which the purchasers of those lots became protected in their right to enjoy, and the destruction of which would deprive them of the benefit in return for which they submit to the reciprocal burdens? We think it was to have those lots used and improved during the time limited by the restriction, for residential purposes, with one dwelling-house for occupation by one family only on one lot, such dwelling-house to set back from the street in accordance with the line established by the restrictions, and to cost at least about $5,000 to build; that as incidental to this general purpose there was also a start made to restrict against outbuildings of any character, but that this part of the restriction where it was imposed has been modified by mutual acquiescence by the insertion, in place of it, in some of the conveyances in connection with the dwelling-house covenants, of the phrase "with necessary or desirable outbuildings," and by its violation in one or more instances by the erection of a garage on the rear of a lot upon which a dwelling-house was constructed in conformity with the dwelling-house restrictions. We do not think, however, that this modification of this incidental feature is of such a nature as to destroy or impair the mutual benefit to the lot owners of the essential general dwelling-house scheme upon the protection of which they relied. So far as the modification of what may be called the incidental "no outhouse scheme" is concerned, of course, defendant's covenant is likewise modified so that his burden will correspond with his benefit, but as to the main essential purpose of the neighborhood dwelling-house scheme, we think defendant's lot continues to participate in its benefit, and, consequently, remains subject to its burden.

This being the case, the question arises, does the construction of the defendant's garage, not on the rear of his lot behind a

dwelling-house constructed thereon in conformity with the cove-
nant, but instead of that, constructed without any dwelling-house
on the lot at all, and in the very place fixed by the covenant for
the dwelling-house to go, fall within the modification of the inci-
dental outhouse covenant so as to be protected by such modifica-
tion? We not only think that it does not, but, on the contrary,
that it is a violation of the essential and beneficial purpose and
effect of the neighborhood dwelling-house scheme. This scheme
gave each lot owner who paid a higher price for his lot with that
in view and constructed his dwelling-house in accordance with
the covenant, the right to expect that the improvement upon his
neighbor's lot in close proximity to his own dwelling-house and
fronting upon an uniform building line, would be a similar
dwelling or one at least of the designated cost. The advantages to
him of such an arrangement are too obvious to require discus-
sion. Instead of this, he finds, as the neighboring improvement,
a sheet-iron garage building of probably comparatively trifling
expense as compared with the cost of the improvement which he
had a right to expect, and doubtless of such displeasing appear-
ance as to quite justify the taste of the owner in placing it beside
someone else's dwelling-house instead of beside his own.

While we entirely agree, therefore, with the view of the vice-
chancellor that there was in this instance a neighborhood scheme,
we think he erred in his conclusion that it had been abandoned
in such essential features as to justify its violation in the manner
in which defendant has violated it.

The other principle invoked by the defendant to justify his
violation of this covenant is that by reason of other similar con-
structions (garages), in alleged similar locations, with reference
to complainant's remaining property, the violated covenant, in
so far as it is violated, has ceased to have any beneficial value to
complainant's property, and, consequently, can form no ground
for equitable relief. This principle, if applicable, would also be
decisive. The foundation for equitable relief in these cases is
that the first vendor, having arranged by the covenant to accept
a part of the consideration for his grant *in a benefit* to accrue to
his remaining property by the performance of the covenant, it
would be unconscionable to permit the covenantor-vendee's as-

signee with notice to cheat the vendor out of this portion of his consideration by *depriving him of the benefit* which he would receive by the performance of the covenant. If, however, there was no benefit, or the benefit has ceased to exist, there is no basis for equitable intervention. Thus, in *Brewer* v. *Marshall, 19 N. J. Eq. (4 C. E. Gr.) 537*, it was held that a covenant not to dig marl on one tract of land was not a benefit to the use of the adjoining tract (the probable purpose to prevent competition being unlawful because in restraint of trade), and, consequently, would not be enforced in equity; and, in *Trustees of Columbia College* v. *Thacher, 87 N. Y. 311* (followed in *Page* v. *Murray, 46 N. J. Eq. (1 Dick.) 325*, and in numerous other cases), it was held that "equity would refuse to enforce a covenant not to devote certain property to business purposes, where there had been such a change in the character of the neighborhood by the building of an elevated railroad and the increase of business houses, as to *defeat the object and purpose of the agreement* and render it inequitable to deprive such owner of the privilege of using his property as its surroundings required." Pomeroy states this principle as follows:

"Specific performance not being an absolute right, the fact that enforcement would be of little or no benefit to the complainant, and a burden upon the defendant, is sufficient to constitute performance oppressive, and it will not be given." *6 Pom. Eq. Jur. 1316.*

The facts in this case, however, fall very far short of bringing it within the operation of this doctrine. It is quite true that complainant, whose interest (aside from what should be her natural desire to protect the purchasers of her ground in a general scheme of improvements upon which she had induced them to rely) is in the value of the mansion-house property directly opposite the lot in question, and in which she lives, and in the value of her other unsold lots, has permitted the erection of garages upon the rear of the lots and back of the dwelling-houses which front toward her property on South Tenth street, and having done so, it would be difficult to see what possible benefit she could have in preventing the defendant from constructing his garage on the rear of his lot and behind a dwelling-house built thereon in conformity with the dwelling-house restrictions. But

this, so far as her property is concerned, situate as it is, is a very different proposition from substituting the probably unsightly outhouse garage instead of and in the exact location of a dwelling-house to cost at least $5,000, for which she stipulated. Her benefit which is invaded by what defendant has done not only equals, but is even greater than that of the neighboring lot owners, because if defendant may lawfully do what he has done, it can only be because both the dwelling-house general scheme and the dwelling-house individual covenants have become inoperative, and in that case all the other dwellings constructed on the east side of South Tenth street may be turned into factories, or built out to the street line in the shape of stores, and the entire residential character of the neighborhood which, by reason of her larger remaining interests, is obviously more valuable to complainant than to anyone else, may be completely destroyed.

The suggestion has also been made that because complainant is using as a garage a stable which existed on the mansion-house property before any of the lots in the entire tract were laid out and sold, she is not in a position to ask relief in a court of equity against the construction of defendant's garage. We cannot see the relevancy of this suggestion. This building was in existence at the time complainant sold defendant's lot, and, consequently, at the time the covenant in question was entered into. There was no reciprocal covenant either for the removal of this building, or to regulate its use, and its use as a garage does not seem in any way to affect either the beneficial result to the complainant of the performance of the covenant in question in particular, or the integrity and beneficial effect of the neighborhood scheme as established by the covenants in general.

For the reasons above stated the decree of the court of chancery is reversed and the case is remanded to that court in order that a decree may be entered in accordance with the opinion herein expressed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Kalisch, Bogert, Vredenburgh, Vroom, Congdon, White, Treacy—14.