JOHN V. BEEKMAN, JR., *vs.* CHARLES G. SCHIRMER.

Suffolk.   May 23, 1921. — June 29, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Equitable Restrictions,* "Appurtenances," Greenhouse.   *Words,* "Appurtenances."

The owners of a large tract of land in Newton formed a syndicate and placed the title to the land in trustees, who conveyed a certain parcel therefrom and, "for the benefit of the land herein conveyed," imposed "on the remaining land of said trustees" within certain streets a restriction, that "No building shall be erected or placed thereon except private dwelling houses adapted for the use of one private family only for each house, and the appurtenances thereto, including a private stable and garage for each of such houses; such dwelling houses shall cost above their foundations not less than $5,000 each."   A subsequent purchaser acquired by separate conveyances two parcels of the land included in the "remaining land" of the trustees, the second of which adjoined the first in the rear and the first purchaser's land at the side and fronted on the same street as did the first purchaser's lot, so that the second purchaser's combined lots extended continuously from beside that of the first purchaser's lot on one street to another street on the opposite boundary of the "remaining land."   The deed by which the second purchaser acquired his first lot contained an equitable restriction which permitted the erection thereon of such a private greenhouse as is commonly used in connection with dwelling houses.   The deed conveying to him his second lot contained a clause of restriction "that only a single dwelling house adapted to the use of one private family only, with such out-buildings, including a private stable or garage, as are commonly used in connection with dwelling houses, shall be erected or placed on the lot."   There were greenhouses on other lots in the entire tract of the syndicate.   Conveyances were not made by the trustees by any one plan of all the lands, but the trustees intended to retain a power in them- selves to change their system of development, and, while restricting the several lots as they were granted, they intended to avoid granting power to the pur- chasers to prevent the imposing of different restrictions or to compel the imposi- tion of identical restrictions on all lots in the entire tract.   The neighborhood was strictly residential with dwelling houses ranging in value from $20,000 to

over $50,000. The second purchaser built an expensive dwelling house on the first lot purchased by him and purposed to erect on the second lot, beside the lot of the first purchaser upon which was an expensive residence, a private greenhouse for the accommodation of his residence and according to a plan calling for an ornament to the locality. The first purchaser sought by a suit in equity to enjoin the erection of the greenhouse. *Held,* that

(1) The second purchaser was bound by the restriction in the deed from the trustees to the first purchaser;

(2) The second purchaser's holdings, even if separately purchased, constituted an entire estate which he could occupy and develop to the same extent and in the same way as if the unity of title had existed when he built the dwelling house, or he had acquired the whole tract under one deed which recited all the restrictions;

(3) The word " appurtenances " as used in the restriction placed upon the " remaining land " of the grantors by the first purchaser's deed, should be construed under such conditions to mean that which might become necessarily connected with the full and free use and enjoyment of the dwelling house whether it took the form of a private stable, or a private garage, or a private greenhouse;

(4) The private greenhouse proposed was not prohibited by the restriction placed upon the "remaining land" of the grantors by the first purchaser's deed, being among the buildings which were "appurtenances" to a dwelling house;

(5) The suit must be dismissed.

BILL IN EQUITY, filed in the Superior Court on July 24, 1920, to enjoin the defendant from erecting a greenhouse on his land on Monadnock Road in that part of Newton called Newton Centre, adjoining land of the plaintiff, in alleged violation of restrictions in the deed of the plaintiff's land on Monadnock Road to him from the Trustees of the Newton Boulevard Syndicate, common source of the title of the parties to the suit.

In the Superior Court, the suit was heard by *Wait,* J., a commissioner having been appointed under Equity Rule 35 to take the testimony. The judge filed a memorandum of findings and an order for a decree as follows:

" The Trustees of the Newton Boulevard Syndicate had a large tract of land for development and sale. Many of the holders of certificates are lawyers. One was a justice of the Superior Court, and one a justice of the Supreme Judicial Court. The trustees were lawyers or real estate men. All had a wholesome fear of equitable restrictions, and a desire to profit by them. This, I think, may be reasonably inferred; and I assume this method of dealing was deliberate. Conveyances were not made by any one plan of all the lands. The language of the deeds given, while similar, was not identical. The restrictions did not terminate at

one time for the whole tract.  The trustees clearly intended to retain a power in themselves to change their system of development; and, while restricting the several lots as they were granted, they intended to avoid granting power to the purchasers to interfere to prevent the imposition of different restrictions or to compel the imposition of identical restrictions on all lots in the entire tract.

"In 1910, they owned the tract bounded by Hobart, Monadnock, and Wachusetts roads.  They sold a parcel to Beekman on May 6, 1910, describing it by a plan of that parcel, and imposing certain restrictions on it.  It was the first conveyance out of the tract bounded by the roads named.  The deed provided: 'And for the consideration aforesaid, the said Trustees, for themselves, their heirs, successors and assigns, do hereby for the benefit of the land herein conveyed impose on the remaining land of said trustees, bounded southerly and easterly by Wachusett Road, westerly by Hobart Road, and northerly by Monadnock Road the following restrictions which shall remain in force for a period of twenty years from the date hereof, subject, however, to the rights of existing mortgagees, namely; no building shall be erected or placed thereon except private dwelling houses, adapted for the use of one private family only for each house, and the appurtenances thereto, including a private stable and garage for each of such houses; such dwelling houses shall cost above their foundations not less than five thousand dollars each.'

"Any one who acquired later any of the remaining land took subject to that restriction.  As matter of fact, the Trustees, as they conveyed the remaining land to different grantees, imposed not only the above restriction in substance, but other restrictions as well.

"The plaintiff acquired, subsequently, other portions of the tract, but none of his deeds give him any greater rights in the defendant's lands.

"It should be noted that the trustees created the restriction in question not for the benefit of the remaining lands, but expressly 'for the benefit of the land conveyed;' and that the power of enforcement is not described as secured to themselves, their heirs, successors and assigns 'owners of the granted premises and of the remaining tract' or in similar language.

" The defendant in 1916 purchased a part of the tract [bounded southerly on Wachusett Road] by a deed which, among other things, restricted the land as follows: '1st. That not more than one single dwelling house, adapted to the use of one private family only, with such outbuildings, including a private garage and private greenhouse, but excluding any stable, as are commonly used in connection with dwelling houses, shall be erected or placed on said land.'

" He later acquired the parcel [bounded by Monadnock Road on the north and by the first tract purchased by him on the south and] adjoining the plaintiff's parcel to the east, on which he has begun the erection of a greenhouse. This latter parcel comes from the trustees by mesne conveyances; and it is restricted so 'that only a single dwelling house adapted to the use of one private family only, with such out-buildings, including a private stable or garage, as are commonly used in connection with dwelling houses shall be erected or placed on the lot,' and in other ways not important to this matter.

" A breach 'shall in no case work a forfeiture of the grant, but shall only give to said Trustees or their successors or assigns the right to compel observance of said restrictions by a bill in equity or a right to enter upon the granted premises and abate and remove at the expense of the party at fault any erection that may be contrary to the true intent and meaning of said restrictions, without being deemed guilty of any manner of trespass for such entry, abatement or removal, or any of such acts.'

" The defendant has built a fine house on the parcel first acquired by him, and he now wishes to place his greenhouse on the second parcel instead of on the first. The structure he contemplates is not designed for business or trade, but for the accommodation of a fine residence. It is forty-eight by forty-eight by eighteen feet in size, to be built of iron, glass and concrete; to cost as much as, or more than the single dwelling contemplated by the restrictions.

" There are greenhouses on other lots in the great tract developed by the Trustees; but none so readily to be observed from the roads. The plan calls for an ornament to the locality. No harm will be caused to the plaintiff by its erection other than the disappointment of not being able to prevent it.

" The plaintiff has a fine residence on his land, and is naturally anxious to maintain the quality of the neighborhood, which is high. In this desire, the defendant and the neighbors share. The neighborhood is exclusively residential, with the dwelling houses ranging in value from $20,000 to over $50,000.

"A greenhouse is, in my opinion, an ' outbuilding commonly used with a dwelling house ' of the character of the dwellings in this vicinity. The deeds which the defendant received in his purchases of his lands all use the phrase ' outbuildings . . . commonly used ' with a dwelling house, and not the phrase ' and the appurtenances thereto,' which was used in the first deed given to Beekman and imposing the general restriction on the ' remaining land ' in the tract bounded by Hobart, Wachusett and Monadnock roads.

" It is too narrow a construction of the language used to hold that unless a dwelling house were placed on the specific parcel originally conveyed to Frank A. Schirmer, [being the parcel upon which the defendant proposes to erect a greenhouse] then no outbuildings can be put on that parcel.

" No one but the plaintiff appears to object to the action contemplated by the defendant. There has been no laches on the part of the plaintiff which should defeat him if otherwise entitled to prevail. . . .

" Let a decree be prepared dismissing the bill. No costs are allowed."

A decree dismissing the bill was entered accordingly; and the plaintiff appealed.

The case was submitted on briefs.

*C. L. Newton,* for the plaintiff.

*W. B. Grant & H. E. Whittemore,* for the defendant.

BRALEY, J. The defendant, who owns two lots of land on one of which he has built and occupies a dwelling house, was erecting on the other lot a greenhouse to be used exclusively in connection with his home, when the plaintiff, an adjoining owner and householder, brought suit to restrain its erection on the ground that the greenhouse was prohibited by certain equitable restrictions created for the benefit and protection of the plaintiff's estate. The trial court dismissed the bill without costs, and the case is here on appeal.

The parties derive title from a common grantor described in the respective deeds as the "Trustees of the Newton Boulevard Syndicate." The declaration of trust gave the trustees exclusive control and management with full power to improve, survey or plot a large tract of land to be developed and sold for residential purposes, and to locate, lay out and grade streets, sidewalks, ways, parks, squares, "and to release lands therefor or for other purposes deemed by them expedient for the trust," and "to grant and acquire easements." The record shows, and the presiding judge found, that conveyances were not made by any one plan of all the lands, but the trustees "intended to retain a power in themselves to change their system of development; and, while restricting the several lots as they were granted, they intended to avoid granting power to the purchasers to prevent the imposition of different restrictions or to compel the imposition of identical restrictions on all lots in the entire tract." The plaintiff's deed, which is prior in time to the defendant's title to both lots, and is the first sale of any of the lots shown on the plan bounded by Hobart, Monadnock and Wachusett roads, contains this provision in the granting clause: the trustees "do hereby for the benefit of the land herein conveyed impose on the remaining land of said trustees, bounded southerly and easterly by Wachusett Road, westerly by Hobart Road, and northerly by Monadnock Road the following restrictions which shall remain in force for a period of twenty years from the date hereof, subject, however, to the rights of existing mortgagees, namely; no building shall be erected or placed thereon except private dwelling houses, adapted for the use of one private family only for each house, and the appurtenances thereto, including a private stable and garage for each of such houses; such dwelling houses shall cost above their foundations not less than five thousand dollars each." While in their subsequent conveyances they imposed other restrictions, those who bought within the period of limitation, acquired title subject to the restrictions in the plaintiff's deed. *Hano* v. *Bigelow*, 155 Mass. 341, 343.

The deed to the defendant of the first lot where he built his house contained among other restrictions that "not more than one single dwelling house, adapted to the use of one private family only, with such outbuildings, including a private garage and private greenhouse, but excluding any stable, as are commonly used in

connection with dwelling houses, shall be erected or placed on said land." By a later deed he acquired the second lot, and in this deed the material restriction reads, "that only a single dwelling house adapted to the use of one private family only, with such out buildings, including a private stable or garage, as are commonly used in connection with dwelling houses shall be erected or placed on the lot." It is plain that if the mansion house were on this lot, a greenhouse to be used in connection with it would be an "out building," the erection and maintenance of which would not be a violation of the restriction just quoted. *Commonwealth* v. *Intoxicating Liquors,* 140 Mass. 287, 289. *Blakemore* v. *Stanley,* 159 Mass. 6. But the defendant's holdings, even if separately purchased, constitute an entire estate which he can occupy and develop to the same extent and in the same way as if the unity of title had existed when he built the dwelling house, or he had acquired the whole tract under one deed which recited all the restrictions. The land, however, was "remaining land," and therefore is subject to the restriction in the plaintiff's deed previously stated, and the final question is, whether the greenhouse, even if used only in connection with the dwelling house, can be classed as among "the appurtenances thereto."

The judge has found in substance that the greenhouse is not to be used independently, but as an adjunct of the dwelling house. The word "appurtenances" is not used in a technical sense. It is to be read with the restrictions in subsequent deeds of the trustees permitting the erection of out buildings including a private garage and private greenhouse, and with the facts that there are greenhouses on other lots, one at least having been built in the immediate neighborhood of the land in controversy. *Clapp* v. *Wilder,* 176 Mass. 332, 338. The whole restriction also shows that "appurtenances" relate to minor structures or buildings needful to a dwelling house when constructed and maintained in a residential environment calling for large expenditure and much luxury. If appurtenances include a private stable and a private garage which are out buildings connected with and incidental to the use and enjoyment of the dwelling house, a private greenhouse for the same general purpose also may be classed as an out building coming within the intention of the grantors when framing the restriction. *Clapp* v. *Wilder, supra.*

We are accordingly of opinion that "appurtenances" should be construed under such conditions to mean that which might become necessarily connected with the full and free use and enjoyment of the dwelling house whether it took the form of a private stable, or a private garage, or a private greenhouse. *Ammidown* v. *Granite Bank*, 8 Allen, 285, 291. *Johnson* v. *Knapp*, 146 Mass. 70. *McShane* v. *Carter*, 80 Cal. 310. *Woodhull* v. *Rosenthal*, 61 N. Y. 382, 390. *Harris* v. *Elliott*, 10 Pet. 25, 54. *Sheets* v. *Selden*, 2 Wall. 177, 187, 188. The decree should be affirmed.

*Ordered accordingly.*