BONNIE M. BUSCH and CLARENCE M. BUSCH, her husband, *Appellants,* vs. J. H. JOHNSTON and A. D. JOHNSTON, his wife, *Appellees.*

145 So. 872.

Opinion filed January 9, 1933.

Loftin, Stokes & Calkins, for Appellants;
J. E. Yonge, for Appellees.

BUFORD, C.J.—Bonnie M. Busch acquired title to Lot 5 in Riviera, a subdivision of Palm Island which lies in Biscayne Bay between Miami and Miami Beach, from the promoters of the subdivision. She acquired Lots 3 and 4 which adjoined Lot 5 from J. E. Robinson who had acquired the same from her grantor as to Lot 5. When she purchased Lots 3 and 4 there had been created on Lot 3 a garage apartment. After the purchase of Lots 3 and 4 she converted the garage into living and drawing rooms and planned to make an addition to this building by adding two rooms and a garage to the structure which plan contemplated extending the structure in such manner that it would cover a part of Lot 4, as well as that part of Lot 3 upon which it was originally built. She started to carry this plan into execution and was enjoined by appellees. The basis of the injunction suit was a restriction contained in the muniments of title from the promoters of the subdivision to the purchasers. The pleadings show that the restriction relied upon was in the following language:

"No residence shall be constructed or erected on said real estate unless the same shall be of a cost of at least Seven Thousand and Five Hundred Dollars, the said amount shall actually be expended on construction or erection of said building and not for fees in connection therewith.

No residence shall be erected on said real estate so that the front wall of such building shall be closer than 25 feet from the street or 25 feet from the water

or sea wall and five feet from exterior side lines, no lot shall contain more than one residence."

The bill of complaint alleged that the defendants were about to erect upon Lot 4 a dwelling which would cost not more than Twelve Hundred Dollars and violated the restriction contained in the muniments of title.

The defendants, amongst other things in their answer, denied that they planned, contemplated or intended to build a dwelling on Lot 4, but averred that they intended and planned to improve the dwelling on Lot 3 by extending it over on to a part of Lot 4 and that such dwelling when completed standing on Lots 3 and 4 would cost far in excess of the sum of Seven Thousand and Five Hundred Dollars and would constitute no violation of the restrictions contained in the muniments of title.

The question presented to the Court below and to this Court is:

"Where the owner of a subdivision conveyed two contiguous lots, by separate conveyances, to one person, and the deed provided that 'No residence shall be constructed or erected on said real estate unless the same shall be of a cost of at least $7,500.00 . . .' and that '. . . No lot shall contain more than one residence,' is the restraint in the deed so clearly expressed that equity will, by injunctive process, prevent such owner from erecting one residence costing more than $7,500.00 on both of the lots?"

The Court below answered this question in the affirmative by granting the injunction and denying a motion to dissolve the injunction, from which orders this appeal was taken.

The Answer alleged:

"The dwelling now on the defendant's property is entirely situated on Lot 4, while Lot 3 is entirely vacant, and the proposed improvements would extend into Lot 3 but will not be closer than 5 feet to the exterior side line of Lot 2. By erecting one dwelling

on two lots, the defendants are following a plan of
development which has almost uniformly prevailed on
the end of Palm Island and are materially adding to
the value of property in Riviera.''

The evidence sustains the allegations.

The record shows that it was the intention and pur-
pose of the parties to the contract containing the restric-
tions that only substantial and attractive homes should
be constructed in the subdivision and the whole record
negatives the idea that it was ever their intention to con-
fine a dwelling to one lot. Such a restriction would
militate against the very result which was sought to be
accomplished.

In Moore vs. Stevens, 90 Fla. 879, 106 Sou. 903, we
said:

"Covenants restraining the free use of real prop-
erty, although not favored, will nevertheless be en-
forced by courts of equity where the intention of par-
ties is clear in their creation, and the restrictions and
limitations are confined to a lawful purpose and with-
in reasonable bounds, unless the rights created by
such covenants have been relinquished or otherwise
lost. Such covenants are strictly construed in favor
of the free and unrestricted use of real property, but
effect will be given to the manifest intention of the
parties, as shown by the language of the entire in-
strument in which the covenant appears, when con-
sidered in connection with the circumstances surround-
ing the transaction. Due regard must be had for the
purpose contemplated by the parties to the covenant,
and words used must be given their ordinary, obvious
meaning as commonly understood at the time the in-
strument containing the covenants was executed unless
they have acquired a peculiar meaning in the partic-
ular relation in which they appear, or in respect to
the particular subject matter involved, or unless it
clearly appears from the context that the parties in-
tended to use them in a different sense.''

There follows a number of citations which support the rule stated.

In Struck vs. Kohler et al., the Court of Appeals of Kentucky, 187 Ky. 517, 219 S. W. 435, then construing the effect of a similar but more definite restriction clause upon the rights of a proposed purchaser to erect a house to be used for ''residence purposes'' upon a plot of ground embracing more than one lot, said:

> ''The limitation in the restriction is that the improvement on each lot shall consist of only one building, and it is clear that two residence buildings could not be erected on each lot without violating the restriction; but we do not think the restriction prohibited the erection of one building for residence purposes that might cover two or more lots. If one residence building, large enough to cover two lots, or even three, was erected, it could not be said that there was more than one building on each lot. We think it clear that a purchaser of two or more lots might, if he wishes, put his residence on the center lot and leave the lots on the other side vacant, or that he might build his residence on two of the lots and leave one of them vacant. In other words, the restriction does not impose any limitation of the right of the lot owner as to the size of the residence to be erected, or confine it to a building that could be placed on one lot.''

It can make no difference as to the present owner's rights whether the lots were acquired by her by the execution of one conveyance from the original developer or by the execution of several conveyances from such owner or by conveyances as to part from such owner and by mesne conveyances as to other parts. The estate finally vested will be the same in either event and the rights and privileges incident are identical. See Beekman vs. Schirmer, 239 Mass. 265, 132 N. E. 45, and cases there cited.

The proposed and intended improvement as described

in the answer and as shown by the proof offered on the hearing on the motion to dissolve the restraining order do not violate the restrictions obtaining and therefore, the orders appealed from should be reversed with directions that the case be disposed of in a manner not inconsistent with this opinion. It is so ordered.

Reversed and remanded.

WHITFIELD, AND BROWN AND DAVIS, J.J., concur.