### TIMMS et ux. v. GRIFFITH et al.
### No. 4146.

Court of Civil Appeals of Texas. Amarillo.

Jan. 28, 1934.

Cooper & Lumpkin, of Amarillo, for appellants.

Morgan, Culton, Morgan & Britain, of Amarillo, for appellees.

HALL, Chief Justice.

Block No. 3 of the Country Club Park addition to the city of Amarillo contains eighteen lots. Lots 1 to 9 front west upon La Salle (Flamingo) street. Lots No. 10 to 18 front east. There is no alley running north and south through the block, and the east line of lot No. 9 and the west line of lot No. 10 are identical. Lots 8, 7, and 6 are situated north of lot No. 9. Ben H. Stone owns a residence upon lot 6. This residence is occupied by the appellee Griffith and his fam-

ily. Timms and wife own lot No. 10 and lot No. 9 and have leased lot No. 8 from the owner thereof, Mrs. Victor Smith. Lot No. 7 is vacant property. Timms and wife have constructed on lot No. 9, immediately back of lot No. 10 upon which their residence is situated, a small barn or stable which has been designated as a summer house by counsel in their pleading.

Griffith filed this suit alleging that, in addition to the barn which had been constructed on lot No. 9, Timms and wife were inclosing with a wire fence lot No. 8 to be used as grazing and exercising territory for a mare and young colt which were housed in the barn on lot No. 9. Stone, the owner of lot 6, joined by Griffith, the tenant, instituted this suit against Timms and wife alleging that in the deeds from E. R. Lewis and wife to E. L. Allen and other assignees of said lots "the use and occupancy of the lots above described was expressly restricted and limited in a number of particulars, including the following: '(1) This lot shall not be used for business, apartment house, duplex, or any other purpose whatsoever except for residence purposes,'" and expressly conferred upon all subsequent vendees and assignees of any of said lots the right to restrain by injunction any violation or threatened violation of the restrictions contained in said deed. They alleged that Griffith, his wife and child, occupied lot No. 6; that Timms and wife are in possession of lots 8, 9, and 10 of said block No. 3, and that, by reason of the restrictions in their chain of title, they are not entitled to use any of said lots 8, 9, and 10 for any other than residence purposes as those purposes were understood and contemplated by the parties to the original deeds from E. R. Lewis and wife, the common source of title to the respective grantees to whom they conveyed said lots; that, notwithstanding the restrictions upon the uses which the defendants could make thereof, they, in violation of the legal and equitable rights of plaintiffs, "have used and are now using said lot No. 9 for maintaining a barn in which they have kept one or more horses for several months past and in which they are now keeping two horses, to-wit: a mare and colt. That defendants are now engaged in the construction of a fence around the west, north and east side of lot No. 8 and have announced their purpose of using said lot No. 8 as a corral or lot for the confinement of horses and perhaps other live stock. That said lots and the barn and corral in which defendants are keeping their horses and intending to keep them and perhaps oth-

er live stock, are immediately south of and alongside the residence occupied by plaintiff Griffith and his family; that the summer breezes in Amarillo are principally from the south and that as the respective properties of defendants and plaintiffs are situated, the breezes come directly across said lots 8 and 9 to lot No. 6 occupied by plaintiff." With much particularity plaintiffs further allege that the maintenance of the barn and stable is and will hereafter constitute a nuisance. The prayer is for a temporary restraining order enjoining the defendants from keeping or confining on any of said lots Nos. 8, 9, and 10 horses or other live stock; that upon a final hearing plaintiffs have judgment permanently restraining defendants from keeping and confining any horses or other live stock on any of said lots 8, 9, and 10; that plaintiffs have judgment for costs and all general and special relief, either in law or in equity, which they shall show themselves entitled to in the premises.

The court filed findings of fact and conclusions of law and rendered judgment in favor of Griffith and Stone restraining Timms and wife from keeping or confining any horses or other live stock on lots 8 and 9 and denying injunctive relief to plaintiffs as to lot 10, because it was not shown that defendants had kept any horses or other live stock on said lot 10 nor threatened to do so.

The court further found that Timms and wife, in keeping the mare and colt on lots 8 and 9, were not guilty of maintaining a nuisance.

According to the court's findings, Timms and wife acquired title to lots 9 and 10 by separate conveyances executed at different times. The several deeds in the chain of title contain other restrictions which properly construed are building restrictions. Our construction of the restriction which is made the basis of this suit is that it relates to the use of the lots. The rule is that a person entitled to the benefit of restrictions may, at his option, enforce any one or more of them without enforcing the others. 4 Thompson on Real Property, § 3433. Briefly stated, the question before us is: Under the particular restriction relied upon by plaintiffs, will Timms and wife be permitted, while residing upon lot No. 10, to acquire the title to lot No. 9 through conveyances containing the same restrictions and erect upon lot No. 9 a stable and keep horses there for riding? We think this question must be answered in the negative.

Blakemore v. Stanley, 159 Mass. 6, 33 N. E. 689, 690, by the Supreme Court of Massa-

chusetts, is a case in point. In that case it appears that Blakemore sued Stanley and others to compel the removal of a tent and stable from certain lots and to enjoin defendants from maintaining them thereon. While the restriction in that case was only for ten years, it stipulated that no building should be erected other than dwellings with necessary outbuildings, said dwellings to cost not less than $2,000 each. The plaintiff further alleged that defendants in violation of this clause had placed a stable and tent costing less than $2,000 in which defendants lived during the summer. The answer admitted the erection of the stable, but alleged that it was a necessary outbuilding and that the tent was placed on the lot for a temporary purpose and not as a permanent dwelling. The trial court's findings recite that the defendants placed on the lots a stable about twelve feet wide and twenty feet long covered with common boards where they kept three horses; that it was to be used in connection with the tent and with a dwelling house if one was ever erected thereon; that they have since used the tent to live in but not to sleep in, being fitted up with a cook stove and other furniture and is temporarily placed on the lot, the defendants living in their own home in Somerville in the winter; that said lots are a part of a large lot of land divided on said plan into about 230 house lots; that the streets in the immediate neighborhood are partly filled up and occupied by dwelling houses. In disposing of the contention, the court said:

"The tent in question was used by the defendants to live in with their family, although they did not sleep in it. It was fitted up with a stove for cooking, and with other furniture. While the defendants lived in their own house in another town in the winter, the fair construction of the report is that the tent was used as a dwelling at other times of the year during the daytime. Although the report finds that the tent was placed temporarily on the lots, it also found that there is no intention of erecting a dwelling house soon. On these findings a majority of the court are of opinion that the tent was a violation of the terms of the restriction.

"The remaining question is as to the stable. That a stable may be a necessary outbuilding may be assumed. But an outbuilding is something which is to be used in connection with a main building (Com. v. Intoxicating Liquors, 140 Mass. 287, 289, 3 N. E. 4); and as there was no main building of the kind called for by the terms of the deed, we are of opinion that the stable in this case cannot be deemed to be a necessary outbuilding. It follows that the plaintiff is entitled to a decree directing the removal of the tent and stable, and restraining the defendants from using the lots in the manner in which they have been using them."

This identical question was again considered in Highland Realty Company v. Groves, by the Court of Appeals of Kentucky, 130 Ky. 374, 113 S. W. 420, 421. The deeds to lots sold by the realty company imposed the restriction that the purchaser should not use the lot for any but residence purposes and that no residence to cost less than the amount specified should be erected upon any lot. Appellee purchased at different times two of the lots which joined. At the time he purchased the second lot it was unimproved. He resided on the adjoining lot previously purchased from appellant. Before the institution of the suit appellee began the erection of a stable on the lot last purchased. It was shown that many other lots had been sold in the addition and were occupied by the vendees. The chancellor refused to enjoin the erection of the stable. This holding was reversed by the appellate court. We quote from the opinion as follows:

"These two deeds in no sense evidence parts of one transaction. The two lots were bought at different times, and in independent transactions. Neither deed can be enlarged or restricted by what may have been said between the parties anteceding its execution. * * * If the residence required by the condition in the deed had been first erected, a stable to be used in connection with it might fall within the term 'residence purposes' (Blakemore v. Stanley, supra), but it can scarcely be maintained that a stable alone fulfills the condition of residence purposes. That which is allowed as an incident of a principal right should follow in order of time, if it is not contemporaneous, else as the grantor here could not ever compel the erection of the dwelling house, the stable alone would be upon the lot, in spite of the condition to the contrary. That such a structure, though not a legal nuisance, might be so objectionable as to offend the taste of the near neighbors and affect the values of adjoining or adjacent properties, is easy to be conceived. * * *

"Appellee's contention that he is using the 40-foot lot for residence purposes by building a stable on it to be used in connection with the 100-foot lot on which his residence is located must be rejected. When he covenanted not to use the 40-foot lot for any but residence purposes, it was contemplated by the language that the residence and such in-

538

cidental use as went with it should all be upon that lot."

The same court in the case of Biltmore Development Co. v. Kohn, 239 Ky. 460, 39 S.W. (2d) 687, 689, a similar case, in determining the rights of the parties under deeds reciting that the property was to be used for residence purposes only, reaffirms the holding in the Highland Realty Company Case in this language: "It was alleged in appellant's answer that it was its purpose to build an apartment house on lot 22, and that the proposed garage would be incidental thereto, but, as said by the chancellor in his opinion, a garage on a restricted lot cannot be justified as incidental to a residence that is not in existence, nor can it be justified as incidental to an apartment building located on an adjoining lot."

In Sanford v. Keer, 80 N. J. Eq. 240, 83 A. 225, 40 L. R. A. (N. S.) 1090, it appears that the purchaser of a lot under similar restrictions as that contained in the deeds in this case erected a private garage thereon where there was no dwelling, the garage to be used by the owner of adjoining property. The court held that the erection of the garage was not permitted by the restrictive covenant.

In White v. Hansen (Tex. Com. App.) 36 S.W.(2d) 456, Judge Critz held that the owner of a lot who erected a servants' house thereon, which they occupied but according to their testimony intended to use as a residence until they could construct a dwelling house thereon at some indefinite time in the future, violated restrictive covenants in their deed which prohibited the use of the premises except for private residence purposes only, and that any residence erected thereon should cost not less than $4,000.

The judgment is affirmed.