Lauriat, J.
The defendant, Joe Cabral (“Cabral”), stands indicted on charges of breaking and entering into a building in the daytime (001, 002 and 004), breaking and entering into a building in the nighttime (003), larceny in a building (005 and 006), intimidation of a witness (007), and receiving stolen goods (008), all arising from his alleged involvement in a series of break-ins at Bell Atlantic NYNEX Telephone Company facilities in Woburn, Medford and Somerville, Massachusetts, in September of 1997 and January, February and March of 1998.
Cabral has now moved to suppress from evidence at his trial all items seized from a shed located in the rear of the premises at 77-79 Heath Street in Somer-ville during a police search of those premises pursuant to a search warrant on March 19, 1998. Cabral asserts that the search of the shed was outside the scope of the search warrant, and therefore constituted an unlawful, warrantless search.
The court conducted an evidentiary hearing on Cabral’s motion to suppress evidence on June 2,1999. It heard testimony from Officer Michael T. Fahey of the Medford Police Department. It also received in evidence two photographs of the premises and rear yard at 79 Heath Street in Medford (Exhibits 1 and 2), copies of the search warrant, Affidavit of Michael Fahey in support of the application for the search warrant, and the officer’s return listing the items *343 seized as a result of the execution of the search warrant (Exhibit 3), and a Medford Police Department business card with handwritten entries on the back (Exhibit 4).
Upon consideration of the credible testimony of the witness, the exhibits, and the memoranda and oral arguments of counsel for the Commonwealth and Cabral, the court makes the following findings of fact, rulings of law, and order on Cabral’s motion to suppress evidence.
FINDINGS OF FACT
On March 18, 1998, Officer Michael T. Fahey (“Fahey”) of the Medford Police Department obtained a search warrant to search the property at “#79 Heath Street Apartment #3, (third floor); a three-story wood-frame dwelling house, vinal [sic] sided and yeliow in color. There being two doors on the first-floor level, the door on the left leading to the second and third floors, which [sic] is occupied by and/or in the possession of: Jose (Joseph) M. Cabral.” (Exhibit 3.) The other door led to the apartment of Cabral’s parents, who owned the property. The search warrant had been sought in furtherance of an investigation of a series of break-ins at Bell Atlantic NYNEX facilities in Woburn, Medford and Somerville, Massachusetts, in September of 1997 and January, February and March of 1998. (Exhibit 3, Addendum A.) The objects of the search warrant were, inter alia, hand tools, generators, computers and computer equipment, and motor vehicle inspection stickers. (Exhibit 3, Addendum A.) In his affidavit submitted in support of the search warrant, Fahey sought permission to search “79 Heath Street, Apt. #3, including all common areas, and any storage areas used by Cabral.” (Exhibit 3, Fahey Affidavit, ¶21.)
Upon securing the search warrant, Fahey, together with other Medford and Somerville police officers and Joseph Sheehan, the Security Manager for Bell Atlantic, conducted a search of Apartment No. 3 at 79 Heath Street in Medford. There, they found and seized several small hand tools, numbered stickers used with motor vehicle inspection stickers, and some computer software. (Exhibit 4.) At that point, Fahey advised Cabral, who was present during the search, that he would seek criminal complaints based on the items seized from the apartment, and that Cabral would be summonsed to court on those charges.
As Fahey and the other officers were leaving Cabral’s apartment, they were advised by a police officer who had been searching a storage shed in the small fenced-in rear yard of 79 Heath Street that a substantial number of the items that were the subject of the search warrant had been located in the storage shed. (Exhibit 2.)[1] After removing and seizing those items from the storage shed, the police arrested Cabral. The items seized from the storage shed were inventoried on the Return of the Officer Serving the Search Warrant. (Exhibit 3.)
RULINGS OF LAW
In his motion, Cabral contends that the search warrant violated his rights under the 4th and 14th Amendments to the U.S. Constitution as well as Articles 12 and 14 of the Massachusetts Declaration of Rights.
I. Probable Cause
Cabral first contends that the affidavit filed in support of the application for the warrant failed to establish probable cause to search 79 Heath Street, #3. To establish probable cause, an affidavit must allege sufficient facts and circumstances “for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched.” Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983).
Construing the warrant within the four comers of the affidavit and any reasonable inferences which may be drawn therefrom, Commonwealth v. Allen, 406 Mass. 575, 578 (1990), the defendant has not sustained his burden of demonstrating that the evidence was illegally seized. Commonwealth v. Taylor, 383 Mass. 272, 280 (1981). The affidavit indicates that Leo Medieros (“Medieros”), a vehicle maintenance worker at Bell Atlantic in Medford for approximately 13 years, learned that Cabral had been selling “Snap On” tools and inspection stickers soon after the break-in of the Somerville Bell Atlantic facility. Medieros also reported that his tools, allegedly stolen during one of the Bell Atlantic robberies, were “Snap On” tools. Cabral admitted to Medieros that he had twice broken into the Medford Bell Atlantic facility and once broken into the Bell Atlantic facility in Somerville. Medieros personally witnessed a canvas-type tool pouch of the type used by Bell Atlantic containing loose hand tools and packages of new tools of the type used by Bell Atlantic (including a specific type of current tester used by Bell Atlantic) in Cabral’s apartment. Medieros had previously seen ladders and a canvas tool bag, both commonly used by Bell Atlantic, in Cabral’s van.
Given that named persons who supply information after being interviewed by police officers or who give information as witnesses during the course of an investigation are not informers, Medieros does not have to undergo the Aguilar-Spinelli test of informant reliability. Commonwealth v. Bowden, 379 Mass. 472, 477 (1980). An “asserted victim of a crime is a reliable informant even though his or her reliability has not theretofore been proven or tested.” Nelson v. Moore, 470 F.2d 1192, 1197 (1st Cir. 1972). Medieros’s observation of items in Cabral’s apartment that were commonly used by Bell Atlantic employees, and information that Cabral was selling tools and inspection stickers, could properly serve as the basis for probable cause. The police also independently corroborated Medieros’s information by matching the items seen at Cabral’s apartment with items reported stolen *344 from the Bell Atlantic facilities. Given Medieros’s information and the independent police corroboration, the issuing magistrate could determine that the items related to the thefts from several Bell Atlantic facilities reasonably would be expected to be present in Cabral’s residence and van. Commonwealth v. Cinelli, 289 Mass. 197, 213 (1983).
II. Search of the Shed
The second issue to be addressed is whether the police could properly search the shed at 79 Heath Street pursuant to their search warrant. Cabral characterizes the shed search as outside the scope of the warrant because cases that have allowed search of subsidiary structures of the dwelling have only concerned private dwellings, and not multi-family dwellings. See State v. Brochu, 237 A.2d 418 (Maine 1968), and Fine v. United States, 207 F.2d 324 (6th Cir. 1953), as cited in Commonwealth v. Hall, 366 Mass. 790, 799 (1975).
If, as a matter of law, the shed was included in the curtilage of 79 Heath Street, #3, the police could validly search the shed. “ ‘Curtilage’ has been [ ] defined to be the fence or enclosure of a piece of lawn around a dwelling-house, usually including the buildings occupied in connection therewith.” Commonwealth v. Hagan, 140 Mass. 287, 289 (1885). See also Commonwealth v. Morphy, 353 Mass. 433, 436-37 (1968). Curtilage is “ordinarily understood as an outbuilding, which is one that, from its character, is to be used in connection with the main building, and may thus be held to be a parcel thereof, even if not immediately attached thereto, as the bams, sheds, and wood and store houses belonging to a dwelling-house.” Hagan, 140 Mass. at 289.
The dwelling at issue is the building to be searched; in the present case, 79 Heath Street, Apt. #3. A shed contained within the yard of a dwelling, particularly when a fence encloses the yard, is considered within the curtilage of the building. Commonwealth v. Hall, 366 Mass. 790, 800 (1975) (“a reference to a detached single house or dwelling is commonly understood to take in the whole property, including subsidiary structures”), citing with approval Fine v. United States, 207 F.2d 324 (6th Cir. 1953) (warrant for a residence to “embrace a shed in the yard”). As the credible evidence shows, the shed was within the fenced-in back yard immediately behind the building at 79 Heath Street. Therefore, at the time of the search, the shed was part of the curtilage of 79 Heath Street.
While the shed may be considered within the cur-tilage of 79 Heath Street, it remains for the court to determine whether it is within the scope of a warrant to search Apartment #3 at 79 Heath Street. The Commonwealth asserts that the shed search was constitutional because the supporting affidavit included a request to search “any storage areas used by Cabral." However, the mere fact that the affidavit included such language does not establish that the shed was included in the curtilage, was within the proper scope of the warrant, or was based on probable cause separate and apart from that which formed the basis for the search of Apartment #3 at 79 Heath Street.
Cabral contends that the police had to know whether he had exclusive access over the shed in order for the shed to be within the scope of their search. There do not appear to be any appellate decisions in Massachusetts which support this argument. Nor are there any Massachusetts appellate decisions which declare that a search of a subsidiary stmcture made pursuant to a warrant for one apartment in amulti-family dwelling is unconstitutional for the mere fact that a subsidiary stmcture was inside the curtilage of the multi-dwelling residence.
The search warrant of one dwelling in a multi-dwell-ing residence has been held to include a cellar where the occupant had “either exclusive access or access shared with others.” Commonwealth v. Pacheco, 21 Mass.App.Ct. 565, 569 (1986). In Pacheco, as here,
The probable cause established [by the] affidavit related to [the defendant’s] apartment without regard to a particular room. For example, the affidavit provided no special cause to search the bathroom or kitchen. Yet, surely, probable cause extended to a search of each of those rooms. The same is tme of the cellar because, given the realities of modem city multiple dwellings, the occupants of each apartment typically have access, either common or exclusive, to at least parts of the cellar.
Id. at 568.
Under the circumstances of this case, and reading the warrant and affidavit in a common sense manner, Commonwealth v. Stewart, 353 Mass. 747, 749 (1971), the court concludes that the shed was within the scope of the warrant. It can reasonably be inferred that Cabral had some level of access to the shed pursuant to his occupancy rights in 79 Heath Street. Furthermore, given the placement of the shed within the fenced-in yard of 79 Heath Street, and given that the residents of both apartments were related to each other, it is reasonable to infer that the defendant had exclusive or shared access to the shed. The shed was, therefore, within the scope of the warrant.
The defendant did not present any evidence concerning what type of access, if any, he had to the shed.[2] He has not, therefore, sustained his burden by demonstrating that the evidence was illegally seized. Commonwealth v. Taylor, 383 Mass. 272, 280 (1981). The court infers from the credible evidence presented at the hearing that he had access and use of the shed pursuant to his occupancy rights in Apartment #3 at 79 Heath Street. Given that the warrant was based on probable cause, that the searched shed was within the curtilage of 79 Heath Street, and that the shed was within the scope of the warrant for 79 Heath St., #3, the warrant’s issuance and execution were constitutional.
*345 ORDER
For the foregoing reasons, the defendant’s Motion to Suppress Evidence is DENIED.

 When the photograph marked as Exhibit 2 was taken on June 2, 1999, the storage shed had been removed from the rear yard. However, Murphy marked with an “X” on the photograph the former location of that shed.

 While not argued to the court, it should be noted that Cabral might not have had an expectation of privacy given the likelihood that he shared the shed with others. Where the premises might have been freely accessible to persons other than the defendant and the defendant did not have controlled access to the area, he has no reasonable expectation of privacy. Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). See also, Commonwealth v. Thomas, 358 Mass. 771, 773-74 (1971) (tenant in apartment building generally has no reasonable expectation of privacy in a basement shared by other tenants, where the tenant has no exclusive control of any part of the cellar).