COMMONWEALTH *vs.* MELVIN H. ERICKSON.

Worcester. September 13, 1982. — October 15, 1982.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Search and Seizure,* Multiple-occupancy structure, Warrant, Probable cause.

The judge in a criminal case erred in denying the defendant's motion to suppress evidence seized pursuant to a warrant authorizing the search of a multiple-occupancy building, based on information that three named individuals had been seen in possession of firearms in certain areas of the building and that shell casings had been found on the stairs and a sawed-off shotgun in the cellar, where no connection had been shown between these named individuals and the defendant or the apartment occupied by him, where the defendant did not have access to or control of the entire building, and where the multiple-occupancy of the building should have been apparent to police before the search. [502-507]

COMPLAINTS received and sworn to in the Central Worcester Division of the District Court Department on March 20, 1981.

On appeal to the jury session, a motion to suppress evidence was heard by *George,* J., and the cases were heard by him.

*Maurice J. McCarthy* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant has been convicted on complaints charging him under G. L. c. 94C, § 34, with unlawful possession of controlled substances (marijuana and amyl nitrite), and under G. L. c. 148, § 39, with unlawful possession of fireworks. He claims error in the denial of his pretrial motion to suppress evidence seized pursuant to a search warrant. We hold that the motion to suppress should have been allowed.

The principal contention raised by the motion to suppress is that the search warrant did not particularly describe the place to be searched as required by the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 2. See *Commonwealth* v. *Pope*, 354 Mass. 625, 628-629 (1968). The warrant, issued on March 19, 1981, by a United States magistrate, described the place to be searched as "11 and 13 Benefit St., Worcester, Massachusetts, a brick three story duplex dwelling along with the cellar of said structure and the garage on said property located on the east side of Benefit St., Worcester." The issuance of the warrant was supported by the affidavit of a special agent of the United States Bureau of Alcohol, Tobacco and Firearms, based upon information supplied by two informants[1] (one of whom had been inside the building), and surveillance by the bureau's agents. The affidavit indicated the agent's belief that illegal firearms were being concealed on the premises. This belief was predicated upon the informants' disclosure that they had observed three named individuals in possession of numerous firearms in specifically identified areas of the building. The informants had also seen shell casings on the stairs of 11 Benefit Street and a sawed-off shotgun in the building's cellar. The affidavit listed the occupants of the building from information in the telephone and city directories, identified the registered owners of vehicles observed in front of the building, stated the criminal records of the occupants, and asserted that none of the occupants had Federal permits to possess or sell firearms. The defendant was not named as one of the persons seen with a firearm; nor was any suspicious activity reported in

---

[1] The defendant's threshold contention that the informants' credibility and reliability were insufficient to permit a finding of probable cause under the "two-pronged" test of *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), is without merit. The affidavit, taken as a whole, satisfies the *Aguilar* requirements and any arguable defects are cured by police corroboration of the information. See *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979); *Commonwealth* v. *DiAntonio*, 8 Mass. App. Ct. 434, 438 (1979).

or near his apartment on the second floor of 13 Benefit Street. There were other areas of the building where no traffic in weapons had been seen. The affidavit reported that the defendant had been convicted of "two counts of possession of a narcotic drug and three counts of possession of a harmful drug" in a local District Court.

There was evidence at the hearing on the motion to suppress that 11-13 Benefit Street is a large three-story brick duplex building located in an area where multiple-occupancy dwellings are common. The building is divided vertically. A person cannot go between 11 and 13 Benefit Street without going out the first floor entrance of one and entering the first floor entrance of the other. The lack of interior access cannot be ascertained from the exterior appearance of the building. The defendant lived on the second floor of 13 Benefit Street in a five-room apartment bearing the number "2" on its door. This side of the building contains a separate apartment (numbered "1") and a room (numbered "1A") on the first floor, the defendant's apartment on the second floor, and an unnumbered apartment on the third floor. Entrance is gained to 13 Benefit Street through a door from the porch which leads into the main hallway. A common passageway connects all three floors. On the second floor there is a landing and a door leading to the defendant's apartment. Access from the second floor to the third floor is gained by turning right at the landing and continuing up the stairs to the next landing.

There is a separate entrance for 11 Benefit Street. The first floor of this side of the duplex contains an unnumbered door leading to rooms belonging to an individual. To the left of that door is another door with no number on it. The second and third floors contain doors leading to rooms or apartments.

The separate entrances to each side of the building are visible from the street. The entrance to number 13 is set farther back than the entrance to number 11. The agent executing the affidavit testified that the building looked to him "like a three-family house; if you were to look at it from

the front, it would not be distinct in any way from one side or the other, other than the entryway." The agent had observed at least two or three separate mailboxes outside the entrances to each side of the building. The defendant testified that he received separate utility and telephone bills for his apartment.

A warrant which directs the search of an entire multiple-occupancy building, when probable cause exists to search only one or more separate dwelling units within the building, is void because of the likelihood that all units within the dwelling will be subjected to unjustified and indiscriminate search. *United States* v. *Hinton,* 219 F.2d 324, 326 (7th Cir. 1955). *United States* v. *Votteller,* 544 F.2d 1355, 1363 (6th Cir. 1976). *United States* v. *Whitney,* 633 F.2d 902, 907 (9th Cir. 1980), cert. denied, 450 U.S. 1004 (1981). *United States* v. *Diange,* 32 F. Supp. 994 (W.D. Pa. 1940). 2 LaFave, Search and Seizure § 4.5(b) (1978). Annot., Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple-Occupancy Structure, 11 A.L.R. 3d 1330, 1333-1339 (1967). This rule is inapplicable to cases where probable cause exists to search the whole building, see *United States* v. *Olt,* 492 F.2d 910, 911-912 (6th Cir. 1974); *United States* v. *Gill,* 623 F.2d 540, 543-544 (8th Cir.), cert. denied, 449 U.S. 873 (1980); 2 LaFave, Search and Seizure § 4.5(b), at 81; or, in certain situations, where it is shown that general access to, and control over, all the building's subunits are available to building occupants, see *United States* v. *Gusan,* 549 F.2d 15, 18-19 (7th Cir.), cert. denied, 430 U.S. 985 (1977); *United States* v. *Whitney,* 633 F.2d at 907-908. Such warrants may also be upheld where the officers who applied for, and executed, the warrant did not know or have reason to know prior to the actual search that the building was not a one-family dwelling. See *United States* v. *Santore,* 290 F.2d 51, 58-59, 67, aff'd in relevant part on rehearing en banc, 290 F.2d 74 (2d Cir. 1960), cert. denied, 365 U.S. 834 (1961); *United States* v. *Dorsey,* 591 F.2d 922, 925-926, 930-931 (D.C. Cir. 1978); *United States* v. *Rios,* 611 F.2d 1335, 1347 (10th Cir.

1979), cert. denied, 452 U.S. 918 (1981); *Owens* v. *Scafati,* 273 F. Supp. 428, 429 (D. Mass. 1967), cert. denied, 391 U.S. 969 (1968).[2]

The Commonwealth contends that probable cause existed to search the entire structure because the agents reasonably could have concluded that the entire building was a facility for the storage and sale of illegal weapons and, consequently, that firearms and ammunition would be found in every room and apartment. There is no mention in the affidavit of anything suspicious occurring in rooms on the second floor of 11 Benefit Street or on the second and third floors of 13 Benefit Street. The activities detailed in the affidavit involved named individuals other than the defendant and took place in rooms where these individuals lived on the third floor of 11 Benefit Street, a first floor room at 13 Benefit Street, and in a first floor room at 11 Benefit Street. The observation of shell casings and suspicious activities in certain common areas would not support a conclusion that every dwelling unit in the building contained a cache of contraband weapons. There was no showing that the defendant had knowledge of his neighbors' conduct or anything to warrant an inference that he was engaged in a joint criminal venture or was independently dealing in illicit firearms. Moreover, there was no showing in the affidavit that the defendant had "the run of the whole structure." See *United States* v. *Dorsey,* 591 F.2d at 931. Nor was it demonstrated that he was the owner or landlord or otherwise in a position to exercise control over the entire building.

---

[2] There are other exceptions to the general rule which are not presented in this case and need not be enumerated. Most of the Massachusetts cases appear to deal with fact patterns in which defects in the warrant's description can be, and are, cured by reference to physical facts known to the officers executing the warrant. See e.g. *Commonwealth* v. *Pope,* 354 Mass. at 629; *Commonwealth* v. *Todisco,* 363 Mass. 445, 448-450 (1973); *Commonwealth* v. *Rugaber,* 369 Mass. 765, 767-769 (1976); *Commonwealth* v. *Gill,* 2 Mass. App. Ct. 653, 654-656 (1974); *Commonwealth* v. *Cohen,* 6 Mass. App. Ct. 653, 654-656 (1978). See also *Commonwealth* v. *Lillis,* 349 Mass. 422, 423-425 (1965) (warrant lacking in descriptive particularity cured by correctly naming occupant of sub-unit to be searched).

Cf. Restatement (Second) Property §§ 12.4-12.5 (1977), or that the persons suspected as illegal weapons dealers had access to the defendant's apartment. In the circumstances, the defendant's prior criminal record of narcotics offenses (as contrasted with firearms violations) is not sufficient, even in conjunction with the criminal records of the other occupants, to authorize a search of the entire building. Contrast *Commonwealth* v. *Anderson*, 362 Mass. 74, 75 n.1, 77 (1972); *Commonwealth* v. *Snow*, 363 Mass. 778, 784 (1973). We conclude that probable cause was not established for a search of the whole building or the defendant's apartment on the second floor of 13 Benefit Street.

The Commonwealth argues that, in the absence of any specific information that the structure had been separated into halves and partitioned into separate apartments, the agents could not have known that the building was a multiple-occupancy structure until after their search was underway. Relying on *United States* v. *Dorsey, supra,* and the exceptions enumerated above, the Commonwealth urges that the warrant be upheld. The warrant's validity is not determined by what the agents knew, but by what they should have known, about the building's nature prior to their search. See *United States* v. *Voteller,* 544 F.2d at 1363-1364; *United States* v. *Esters,* 336 F. Supp. 214, 219 (E.D. Mich. 1972). The facts in cases like *Dorsey,* in which warrants were upheld, differ materially from the facts in this case.[3] Here, the multiple-occupancy character of 11 and

---

[3] In *United States* v. *Dorsey, supra,* for example, a warrant authorizing the search of the whole of a rooming house upon probable cause as to one of its occupants was upheld even though police had been in the building on prior occasions. The court noted that "the dwelling in question showed no outward signs of multiple residency — such as separate entrances, doorbells, mailboxes, nameplates, apartment numbers, or room for rent signs." 590 F.2d at 930. Prior police observation of the interior indicated that "the doors to the upstairs bedrooms had no numbers, no locks, . . . and apparently were left wide open, bearing out the view that any occupant of the house had 'the run' of the whole structure." *Id.* at 931. Additionally, police investigation indicated that only three people lived primarily at the address, two of whom were related, the third person

13 Benefit Street should have been reasonably apparent prior to the search. Apart from the information imparted from the other multi-family structures in the neighborhood, the building's separate entrances, and the number of mailboxes on each side, agents had kept the building under surveillance for six months prior to the search. The agent who signed the affidavit knew that several individuals lived in the building and that some of these individuals had separate mailboxes and their own telephones. Moreover, one of his informants had been inside the building and had supplied information that the suspected individuals lived on different floors.

The Commonwealth refers to cases which indicate that a warrant must be read in its entirety and not in a hypertechnical fashion. *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). *Commonwealth* v. *Von Utter*, 355 Mass. 597, 600 (1969). *Commonwealth* v. *Stewart*, 358 Mass. 747, 751 (1971). *Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 627 (1978). We cannot, however, overlook the particularity requirement where the presence of criminal activity on the second floor of 13 Benefit Street (and any participation by the defendant in such activity elsewhere in the premises) is left to speculation and where the agents should have known that they were dealing with a multiple-occupancy building. The affidavit was insufficient as it stood.

We refrain from entering judgments for the defendant on the ground that the Commonwealth has no reasonable pros-

---

sharing a bedroom with one of the others. Police had checked to see if the building had been registered as a rooming house. It had not. Checks of utility company records would not have revealed the character of the building. *Ibid.*

Similarly, in *United States* v. *Santore, supra,* the two-family home searched was "to all outward appearances a one-family house with a front door and a side door, and it had always been registered with the local authorities as a one-family dwelling." 290 F.2d at 67. The home had been subdivided in contravention of a local ordinance requiring permission to do so. The court held, based on the building's appearance and the concealment of its subdivision, that there had been no notice to law enforcement officials of the nature of the premises until after they had been entered for service of the warrant. *Ibid.*

pect of making its proof without reference to the evidence which should have been suppressed. See *Commonwealth* v. *Taylor,* 383 Mass. 272, 285 n.17 (1981). Charges against other defendants whose apartments were searched on the basis of apparent probable cause are pending in the United States District Court for the District of Massachusetts. The trial of these cases may provide the Commonwealth with evidence, apart from the evidence which we order suppressed, sufficient to make out a case against this defendant. If the prosecutor finally determines that such evidence is lacking, he will be obliged then so to notify the court. Cf. S.J.C. Rule 3:22A (now redesignated rule 3:08), PF 1, 6, and 11, 377 Mass. 923, 925, 926-927 (1979).

*Judgments reversed.*

*Findings set aside.*