COMMONWEALTH vs. MIGUEL PACHECO.

Suffolk.  December 17, 1985. — January 31, 1986.

Present: ARMSTRONG, CUTTER, & FINE, JJ.

*Search and Seizure,* Affidavit, Probable cause, Multiple-occupancy struc-
   ture.

An affidavit which established probable cause to search the first floor apart-
   ment of a three-story apartment structure was sufficient to support the
   issuance of a search warrant which, in addition to the first floor apartment,
   expressly authorized a search of the cellar of the building, at least to
   the extent that any such search involved no significant invasion of any
   part of the cellar where tenants of other apartments had a reasonable
   expectation of privacy or exclusive occupancy. [567-569]

INDICTMENT found and returned in the Superior Court De-
partment on November 15, 1983.

A motion to suppress evidence was heard by *Harry J. Elam,* J.

An application for an interlocutory appeal was allowed by
*Francis P. O'Connor,* J., in the Supreme Judicial Court for
the county of Suffolk and the matter was reported by him to
the Appeals Court.

*Michael J. Traft,* Assistant District Attorney (*William M.
White, Jr.,* Legal Assistant to the District Attorney, with him)
for the Commonwealth.

*James E. McCall* for the defendant.

CUTTER, J. Pacheco had been indicted for possessing on
October 3, 1983, 200 grams of cocaine with intent to distribute
it. See G. L. c. 94C, § 31. The Commonwealth was granted
(by a single justice of the Supreme Judicial Court) leave to
file an interlocutory appeal, and did appeal, from the allowance
by a Superior Court judge of Pacheco's motion to suppress
certain items seized under a search warrant, which expressly
authorized a search of the cellar of 8 Lyford Street, Dorchester.

There the suppressed items were found by members of the Boston police department's drug control unit. The warrant had been issued pursuant to an affidavit of Officer Joseph Driscoll of the drug control unit.

The motion judge (in a memorandum accompanying his allowance of the motion to suppress the items found in the search) treated the issue before him as "whether the statements . . . in the affidavit supported the inference that the . . . property [sought] could reasonably have been expected to be located in the places specified" in Officer Driscoll's affidavit. The judge correctly concluded "that the affidavit on its face established probable cause for the search of the first floor apartment." He ruled, however, that the affidavit contained nothing which warranted "more than a vague suspicion that controlled substances were being concealed in the common basement of this three-family house."

For this conclusion, the judge relied on *Commonwealth* v. *Erickson,* 14 Mass. App. Ct. 501, 504-506 (1982). The present case is distinguishable from the *Erickson* case on its facts. In the present case, the affidavit directed attention to only one apartment (said in the affidavit to be occupied by one Paccino)[1] in a three-story apartment structure. The suspicious transactions, credibly reported by an informant previously proved reliable, took place principally in that ground floor apartment. The warrant directed only a search (as requested in the application for the warrant) "in certain rooms, closets, storage areas, and cellar in the 1st floor three story wooden dwelling" here under discussion. In the *Erickson* case, the building involved was a vertically divided multiple dwelling structure, in which firearms (the subject of that search) in the possession of some individuals and the individuals themselves had not been connected by the affidavit with Erickson's second floor apartment or with Erickson himself. It was not shown that any individuals seen with firearms had access to that apartment.

The present motion judge's conclusion that there was probable cause for the search of the first floor apartment necessarily

---

[1] No question appears to have been raised at trial and none was raised before us that Pacheco was not the Paccino referred to in the affidavit.

implied satisfaction of the "two-pronged" test of *Spinelli* v. *United States,* 393 U.S. 410 (1969), and *Aguilar* v. *Texas,* 378 U.S. 108 (1964). See *Commonwealth* v. *Upton,* 394 Mass. 363 (1985), and *Commonwealth* v. *Saleh,* 396 Mass. 406, 407 (1985). Officer Driscoll's affidavit established sufficiently both the proved reliability and credibility of the informant and existence of probable cause to search the apartment. Photographs of the cellar area and of the building introduced in evidence at the hearing on the motion to suppress showed the nature of the structure itself and the presence in the cellar of utility meters and heaters to which all the tenants of each of the several apartments certainly would be entitled to have common access.

We think the motion judge viewed the affidavit and the magistrate's decision to issue the warrant (based on the affidavit) in hypertechnical fashion, see *Commonwealth* v. *Atchue,* 393 Mass. 343, 345-349 (1982), inconsistent with Massachusetts decisions like *Commonwealth* v. *Cefalo,* 381 Mass. 319, 324-330 (1980), and *Commonwealth* v. *Cinelli,* 389 Mass. 197, 213-214 (1983). See also *Commonwealth* v. *Burt,* 393 Mass. 703, 715-716 (1985); *Commonwealth* v. *Saleh,* 396 Mass. at 412, and cases cited; *Commonwealth* v. *Germain,* 396 Mass. 413, 418 (1985). Reading the affidavit with "a common sense, non-technical approach," the magistrate reasonably could infer that any cellar area close to the first floor apartment (and to which its occupants had access) might be used by Pacheco or any other occupant of the apartment to store the cocaine observed by the informant.[2]

As probable cause existed to search Pacheco's apartment, we conclude that probable cause had been established to search any reasonably related cellar area of that apartment as a dwelling to the extent, at least, that any such search involved no sig-

---

[2] When the search was made, cocaine was found in a padlocked tool box concealed in the ceiling of the cellar. A key which fitted the padlock was taken from Pacheco, who admitted that he owned the tool box and the key that opened it. When first seen at the time of the search, Pacheco was installing a radio in his automobile in a parking lot adjacent to 8 Lyford Street and was not in the first floor apartment.

nificant invasion of any part of the cellar where tenants of other apartments had a reasonable expectation of privacy or of exclusive occupancy. The probable cause established by Officer Driscoll's affidavit related to Pacheco's apartment without regard to a particular room. For example, the affidavit provided no special cause to search the bathroom or kitchen. Yet, surely, probable cause extended to a search of each of those rooms. The same is true of the cellar because, given the realities of modern city multiple dwellings, the occupants of each apartment typically have access, either common or exclusive, to at least parts of the cellar.

The facts of the present case resemble in certain respects the situation discussed in *Commonwealth* v. *Thomas,* 358 Mass. 771, 772-775 (1971).[3] There police officers, acting upon advice from an informant, went to premises where drug distribution was suspected. The defendant, Thomas, occupied one of two apartments on the third floor. The officers had no search warrant and made no attempt to obtain one. A rear cellar door was "open an inch or so." The officers pushed it open and entered the cellar without permission from any person. In the ceiling of what was plainly a cellar used by all tenants of the building, they found in a somewhat exposed area, in a paper bag, cardboard boxes containing packages of heroin. They replaced these items in the ceiling and watched the cellar area. When Thomas entered the cellar a few hours later and went to the hiding place he was arrested. His motion to suppress the contraband items was denied. This action was sustained by

---

[3] The *Thomas* case has been cited with apparent approval in later authorities. See e.g., *Commonwealth* v. *Battle,* 365 Mass. 472, 475 n.3 (1974); *Commonwealth* v. *Dinnall,* 366 Mass. 165, 167 (1974); *Commonwealth* v. *Albert,* 391 Mass. 853, 862 (1984); *Commonwealth* v. *Frazer,* 10 Mass. App. Ct. 429, 432-433 (1980); *United States* v. *Pagan,* 537 F.2d 554, 557-558 (1st Cir. 1976); *United States* v. *Arboleda,* 633 F.2d 985, 992 (2d Cir. 1980), cert. denied 450 U.S. 917 (1981). Compare *Commonwealth* v. *Hall,* 366 Mass. 790, 794-795 (1975) (separate area near apartment of building owner and under his control not within the *Thomas* case principle); *Commonwealth* v. *Pietrass,* 392 Mass. 892, 899 n.11 (1984, whether a porch within the "curtilage" of premises a matter of fact to be determined). See for cases dealing generally with similar situations 1 & 2 LaFave, Search and Seizure §§ 2.3, 2.4, 4.5(b) (1978 & Supps. 1985).

the Supreme Judicial Court, which held (at 774-775) that entering the cellar, although a trespass, was at most a trespass against the building owner. "It did not invade an area within the 'curtilage' of Thomas's apartment . . . . In a modern urban multi-family apartment house, the area within the 'curtilage' is necessarily much more limited than in the case of a rural dwelling subject to one owner's control . . . . In such an apartment house, a tenant's dwelling [i.e., as a part of its curtilage] cannot reasonably be said to extend beyond his own apartment and perhaps any separate areas subject to his exclusive control." 358 Mass. at 774-75.[4] To deny the authority of a magistrate expressly to allow by warrant a search of any area of a cellar to which the occupant of an apartment has either exclusive access or access shared with others, where probable cause to search the apartment has been established, would present a serious obstacle to proper law enforcement. It would immunize, in effect, from search an important area where an occupant of that apartment could conceal contraband or other objects of a proper search. This would greatly reduce the incentive to the police to follow the preferred route of seeking a warrant. *United States* v. *Ventresca,* 380 U.S. 102, 108-109 (1965).

The order granting the motion to suppress is reversed and the matter is remanded to the Superior Court for trial.

*So ordered.*

---

[4] The *Thomas* case suggests that the search of the cellar as a common area in the present case might not have required a warrant, because it was not shown to have been an area to which Pacheco had exclusive access and thus not within the "curtilage" of his apartment. We approve, nevertheless, the prudent action of the police in seeking a warrant. The cellar was closely related to the occupancy of Pacheco's apartment and access to it was an incident of the occupancy even if it was not within its curtilage. Because of his access to the cellar it was a place in which he might store contraband if he was prepared (as he proved to be) to run the risk that others would find the drugs before he needed them.