## COMMONWEALTH *vs.* RAYNALDO DOMINGUEZ.

No. 01-P-1443.

Essex. December 16, 2002. - March 21, 2003.

Present: CYPHER, KANTROWITZ, & COWIN, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant, Multiple occupancy building. *Evidence,* Prior misconduct.

In a criminal case, the motion judge properly denied the defendant's motion to suppress evidence seized by police in the execution of a search warrant that misidentified the defendant's home as a single-family dwelling, where the officers who applied for, and executed, the warrant did not know or have reason to know prior to the actual search that the building, which contained two separate apartments, was not a single-family dwelling. [609-611]

At a criminal trial, the judge did not err in admitting evidence of the defendant's prior bad acts, where the evidence was probative of the defendant's pattern of operation, intent, knowledge, and motive, and where the judge provided the jury with appropriate and thorough instructions. [611]

INDICTMENTS found and returned in the Superior Court Department on November 13, 1996.

A pretrial motion to suppress evidence was heard by *John C. Cratsley*, J., and the cases were tried before *Nancy Merrick*, J.

*Thomas E. Hagar* for the defendant.

*Daniel I. Smulow*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. Was it reasonable for the police to believe that 38 Cabot Street in Salem was a single-family house, as opposed to a multi-unit dwelling? If so, the warrant to search the house was valid, despite the police officers' discovery of a second unit within. If not, the warrant was invalid on lack of particularity grounds, and the motion to suppress should have been allowed. We hold that the belief was reasonable and that the trial judge correctly denied the defendant's motion to suppress evidence.

*Background.* After a four-day trial, a jury found the defendant, Raynaldo Dominguez, guilty of trafficking in cocaine over fourteen grams,[1] G. L. c. 94C, § 32E, and possession of that cocaine within 1,000 feet of a school zone, G. L. c. 94C, § 32J. The defendant was found not guilty on a third indictment for trafficking in cocaine over twenty-eight grams.[2]

The defendant appeals, claiming that (1) the motion judge erred in denying his motion to suppress evidence as the search warrant did not particularize the place to be searched; and (2) the trial judge abused his discretion by admitting in evidence prior bad acts of the defendant.

*Motion to suppress.* Based on an investigation of drug dealings by the defendant, Detective James Page of the Salem police department wrote an application to search two dwellings, 38 Cabot Street and 31 Perkins Street, both in Salem and both used by the defendant, as well as two motor vehicles used by the defendant in delivering cocaine. We need not discuss at length the eleven-page, single-spaced, thorough, supporting affidavit that was based upon information from three confidential informants, controlled buys, and police surveillance and that detailed the defendant's extensive drug dealings. The defendant rightly does not challenge that sufficient evidence existed to justify the issuance of the warrant.

The issue on appeal involves the house at 38 Cabot Street. The house was targeted because the police believed that the defendant lived and stored cocaine at that location. A confidential informant told Detective Page that the defendant had purchased the house using the names of his girlfriend and mother "to avoid police seizing the home as [he did] not have a legitimate income."

When the police executed the warrant at 38 Cabot Street,[3] they discovered, to their surprise, that the dwelling was not a

---

[1] The basis for this charge was the cocaine found in the defendant's leather jacket, which the police discovered during their search of 38 Cabot Street. See note 5, *infra.*

[2] The basis for this charge was the cocaine that William Mulherin allegedly was delivering for the defendant. Mulherin testified as a Commonwealth witness. See note 10, *infra.*

[3] The search warrant granted permission to search "38 Cabot Street in Salem, Ma. 2 story light green house with shingles, new wood framing

single-family house,[4] as they had thought, but rather that it contained an apartment.[5] This revelation serves as the basis for the defendant's challenge — that the police should have known the dwelling contained two units and that their failure to request a warrant to search the apartment therein rendered the warrant defective.

The defendant alleges the following to buttress his argument. First, in the affidavit itself, 38 Cabot Street was described as multi-unit; second, this fact would be known if one went inside; third, documentation, which the police viewed at the assessor's office, indicated the dwelling was multi-unit; fourth, in checking postal records, which was done as part of the investigation, Page learned that two other people besides the defendant — specifically, his girlfriend, Tania Sone, and his niece, Glenda Rodriguez — received mail at 38 Cabot Street; and last, in viewing the dwelling from the rear, one saw two porches, indicating a multi-unit dwelling.

After a hearing, the motion judge denied the defendant's motion to suppress evidence. The judge credited Detective Page's testimony that the listing of 38 Cabot Street in the affidavit as a multi-unit dwelling was a clerical error,[6] noting that the application for the search warrant and the warrant itself described the premises as a single-family dwelling. Further, the judge credited Page's testimony that any police effort to enter the premises prior to the warrant application could have thwarted the

around the front door with a black number 38 in the center, brick steps up to a wooden porch with a black [wrought] iron railing on the porch and a picture window on the first floor to the right of the door."

[4]The dwelling at 38 Cabot Street was two stories tall, with a single, central entrance and the number "38." There were no mailboxes or doorbells in the front of the building, and there were no separate assigned spaces in the driveway, which ran the length of the property and led to a garage in the back.

[5]The police asked for and received permission to search the upstairs apartment, in which the defendant's niece, Glenda Rodriguez, resided; nothing was found. The evidence seized from the downstairs apartment included a small electronic scale, boxes of sandwich bags and razor blades, personal papers in the defendant's name, and a leather jacket with his initials on it. Inside the jacket were packages of cocaine.

[6]In using the word processor, Page, while moving sentences, inadvertently and mistakenly used the phrase "multi-unit dwelling" to describe 38 Cabot Street.

investigation.[7] As to the documentation from the assessor's office, the judge found credible Page's explanation for traveling there — to corroborate what the confidential informant had told him, namely, that the dwelling was owned by Jacinta Dominguez and Tania Sone. The judge did not think that the presence of a code — "L.U. 104" — in small letters in the upper left-hand corner of a document, which code actually indicated a multi-unit dwelling, should be held against the Commonwealth. Finally, the judge also found plausible the explanation of Rodriguez's receipt of mail at 38 Cabot Street.[8]

The judge ultimately concluded, "Detective Page did not know, and did not have reason to know, of the multi-unit character of 38 Cabot Street. His discovery of the multiple occupancy occurred only after the police had proceeded so far with the search warrant that their withdrawal would jeopardize the search." We agree.

*The law.* "A warrant which directs the search of an entire multiple-occupancy building, when probable cause exists to search only one or more separate dwelling units within the building, is void because of the likelihood that all units within the dwelling will be subjected to unjustified and indiscriminate search." *Commonwealth* v. *Erickson,* 14 Mass. App. Ct. 501, 504 (1982).

There are, however, three exceptions to this general rule. First, "where probable cause exists to search the whole building"; second, where the defendant has the "run of" the building, i.e., "where it is shown that general access to, and control over, all of the building's subunits are available to building occupants"; and, third, "where the officers who applied for, and executed, the warrant did not know or have reason to know prior to the actual search that the building was not a one-family dwelling." *Ibid.* (Citations omitted.) See *Commonwealth* v. *Luna,* 410 Mass. 131, 136 (1991).

---

[7]According to Page's affidavit, on one occasion, "Detective Rocheville noticed that DOMINGUEZ had observed him and broke off the surveillance."

[8]The judge ruled that "the link between a postal check divulging an individual's name and the necessary inference of separate units is too tenuous. Glenda Rodriguez may simply receive mail at 38 Cabot Street, may live there as a common tenant, or may have once lived at this address."

In *Commonwealth* v. *LaPlante*, 416 Mass. 433, 438 (1993), "[t]he judge found that the premises had one mailbox with one number on it, one electric meter, and one central doorway. The judge determined that the police spoke with the town clerk and learned from the clerk that one family lived at that address. The judge noted that, although there were two gas meters on the structure, all other indicators of occupancy pointed to a single-family house." The court affirmed the denial of the defendant's motion to suppress evidence. "If the police, after reasonable investigation, did not know and reasonably could not have known of the multi-unit character of the premises at the time of the warrant's issuance, a warrant to search the entire premises is valid." *Id.* at 439.

Ultimately, the issue comes down to a question of fact as to the reasonableness of the efforts by the police. "The burden [is] on the defendant[], in challenging the seizure of evidence pursuant to a search warrant, to show that the police reasonably should have known that there were two separate apartments in what appeared to be a single-family house." *Luna, supra* at 137.

In the present case, when viewing the house from the front, there was nothing to indicate that it was anything other than a single-family dwelling. It had one front entrance with a single number on it. The following possible indicia of multiple occupancy also were not present: multiple mailboxes, doorbells, marked parking spaces, and gas or water meters. There was no evidence presented that the neighborhood consisted of anything other than single-family dwellings. Page was neither "required to risk disclosure of the surveillance and jeopardize his investigation by an earlier approach to [the rear of, or inside, the dwelling]," *Commonwealth* v. *Demogenes*, 14 Mass. App. Ct. 577, 582 (1982), nor to know what an innocuous, cryptic figure, LU-104, on a document at the assessor's office meant. Having no reason to suspect the dwelling contained an interior apartment, the police had no need to conduct any further investigation into the issue. While, in hindsight, evidence existed suggesting that the dwelling contained an interior apartment, the determinations made by the motion judge properly indicate that

"all other indicators of occupancy pointed to a single-family house."[9] *LaPlante, supra* at 438.

*Prior bad acts.* The law of prior bad acts is well known and need not be discussed at length. Simply, evidence of a prior bad act is admissible, not to show bad character or propensity to commit the crime charged, but for certain probative uses such as "common scheme, pattern of operation, absence of mistake or accident, identity, intent, or motive." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). It is within the judge's discretion to admit such evidence, and his decision will be upheld absent palpable error. *Commonwealth* v. *Gollman*, 436 Mass. 111, 113-114 (2002).

There was no error in the admission of evidence of the relationship between William Mulherin[10] and the defendant, which included Mulherin's drug purchases from the defendant and Mulherin's drug deliveries for the defendant. The evidence was probative of the defendant's pattern of operation, intent, knowledge, and motive. The judge provided the jury with appropriate limiting and thorough final instructions. Given the acquittal of the defendant on the most serious charge, it appears the jury heeded the judge's cautionary words.

*Judgments affirmed.*

---

[9]There was evidence that the defendant had the run of the house. He apparently had purchased and was renovating it, e.g., replacing the doors and installing lighting. He was regularly present and received mail there, as well as a notice of a hearing for a G. L. c. 209A order. Contrast *Commonwealth* v. *Erickson, supra* at 505 (no showing that the defendant had the " 'the run of the whole structure' . . . . Nor was it demonstrated that he was the owner or landlord or otherwise in a position to exercise control over the entire building"). In any event, we need not decide the issue on these grounds.

[10]As part of their investigation, the police conducted a controlled buy from the defendant. Within twenty minutes of the order being placed with the defendant, Mulherin delivered the drugs ordered. He agreed to cooperate with the Commonwealth and received a lesser sentence for his testimony. The indictment against the defendant for trafficking in over twenty-eight grams of cocaine resulted from the drugs found on Mulherin.