Chin, J.
The defendant, Amado Andrades, is charged with trafficking cocaine with a net weight of 200 grams or more in violation of Mass. Gen. Laws ch. 94C, §32E(b), and with trafficking cocaine within one thousand feet of school property. This matter is before the court on the defendant’s motion to suppress evidenced seized by the police at 235 Pleasant Street, Brockton, Mass., pursuant to a search warrant executed on December 19, 2002. For the reasons discussed below, the defendant’s motion to suppress is ALLOWED.
BACKGROUND
There were two search warrants issued for 235 Pleasant St., Brockton, Mass. (235 Pleasant St.). The first search warrant, for the second-floor apartment, was issued on December 16, 2002 and executed on December 19, 2002. No drugs were seized as a result of the search of the second-floor apartment. On the same day as executing the first search warrant, the Brockton Police obtained a second search warrant, this time for the third-floor apartment. The third-floor apartment was vacant. As a result of this search, police seized 471 grams of cocaine along with other items commonly used in the drug trade such as a scale, clear plastic bags and razor blades from the third-floor apartment.
*51 I. THE FIRST SEARCH WARRANT
On December 16, 2002, Brockton Police Officer George Khoury (Khouiy) filed an Affidavit in Support of a Search Warrant (Affidavit) for the defendant’s alleged residence at 235 Pleasant St., Apartment 2, Brockton, Mass. (235 Pleasant St., second floor). This search warrant was issued on December 19,2002. The Affidavit contained the following pertinent information.
Khouiy is assigned to the Narcotics/Vice Unit and has been a police officer for seven years. Khoury holds a Bachelor’s degree in Law Enforcement from Western New England College. In addition, Khouiy has attended numerous courses and seminars relating to narcotic investigations including the Police Academy School on Drug Abuse (8 hours), Federal DEA Basic Narcotics Course (80 hours), and a four-hour seminar hosted by the Federal DEA on concealment techniques utilized by criminal organizations. Khouiy has participated in hundreds of undercover purchases of narcotics, and surveillance of street and/or dwellings in which drug dealers apply their trade. Khouiy has been involved in numerous arrests relating to narcotic violations. Khouiy has conducted numerous searches as a member of the Brockton Police Narcotics Unit leading to the seizure of narcotics and drug paraphernalia.
In October 2002, Khouiy spoke to a confidential informant (CI) who informed him that he had been purchasing both crack and powdered cocaine from a group of Hispanic males in the City of Brockton for the prior three years. The CI stated that the leader of the organization was a Hispanic male in his thirties. The CI stated that in order to purchase cocaine from this group he dials a cellular telephone number (508) 345-1087 and speaks with Davey (later identified by photograph as Benito Rivera). Davey directs the CI to various locations in the City of Brockton where the sales are conducted. The CI stated that the organization uses a small brown car and a small black car.
On October 22, 2002, the CI stated it would be willing to make a controlled purchase of cocaine from this organization. The CI was searched for any iype of controlled substance or money. Upon finding none, the CI was given a sum of currency and told to dial (508) 345-1087. The CI had a conversation with Davey and placed an order of cocaine with him. The CI was directed to a specific location in the City of Brockton. The CI then proceeded to the meet location and waited while under constant surveillance by Khouiy. Approximately 10 minutes after the Cl’s arrival, Khouiy observed a brown 1990 Honda Civic bearing Mass. Registration 6167WW pull up to the CI. Khouiy observed the CI lean into the passenger side window of the car. The CI then left the area and walked directly over to Khouiy and handed him a quantity of suspected cocaine. The substance was later field-tested and showed a positive response for cocaine. According to the Mass. Registry of Motor Vehicles, a brown 1990 Honda Civic bearing Mass, registration 6167WW is registered to the defendant, Amado Andrades, 78 Rockway St., Lynn, Mass. Amado Andrades’ license lists an address of 68 Brett St., Apartment B, Brockton, Mass.
On October 26, 2002, Khouiy met with the CI in order to show it a series of photos. The CI stopped at the photo of the defendant, Amado Andrades and stated, “this guy used to deliver with Davey, but I have not seen him in a while.” Affidavit, Page 5.
On November 2, 2002, the CI stated it would be willing to make another controlled purchase of cocaine from this organization. The CI was searched for any type of controlled substances or money. Upon finding none, the CI was given a sum of currency and told to dial (508) 345-1087. The CI had a conversation with Davey and placed an order for cocaine. The CI was then directed to a specific location in the Ciiy of Brockton. The CI then proceeded to the meet location and waited while under constant surveillance by Khouiy. Approximately 20 minutes after the Cl’s arrival, Khouiy observed a brown 1990 Honda Civic bearing Mass. Registration 6167WW pull up to the CI. Khouiy observed the CI lean into the passenger side window of the car. The CI then left the area and walked directly over to Khouiy and handed him a quantity of suspected cocaine. The substance was later field-tested and showed a positive response for cocaine.
From October 2002 through December 19, 2002, Khouiy conducted several surveillance operations of this suspected organization in which the defendant, Amado Andrades, was allegedly involved. Specifically, on December 6, 2002, Detective Bonanca (Bonanca) received a telephone call from an unidentified Hispanic male. The Hispanic male stated to Bonanca that he was a Dominican drug dealer in the City of Brockton. The Hispanic male went on to state that another Hispanic male who sells a large quantity of cocaine stashes and packages his cocaine at 235 Pleasant St., second floor. The Hispanic male further stated that the Hispanic male who stashes and packages his cocaine at 235 Pleasant St. drives a black Honda bearing Mass. Registration 6375YM and he believed the party’s name to be Jose Mejia (who is not a party in this motion). The Hispanic male went on to say that Jose Mejia has warrants for drug trafficking out of Brockton. When Bonanca asked the caller why he was providing this information, the caller stated, “because he’s my competition.” Bonanca later searched the warrant management system and discovered an outstanding warrant for Jose Mejia for trafficking out of Brockton.
On December 7, 2002, Khoury, Bonanca and a Detective McDermott (McDermott) were conducting surveillance of the black Honda bearing Mass. Registration 6375YM. During the surveillance, Khouiy followed the car which was driven by an unknown Hispanic male and was parked at the LaMontanita *52 store on Warren Ave., Brockton, Mass, to 426 N. Warren Ave., Brockton, Mass, where the Hispanic male met with other unidentified Hispanic males. The car then proceeded to 235 Pleasant St. Khoury observed the second-floor lights go on. Approximately 45 minutes later, Khoury followed the car to 189 Belmont St., Brockton, Mass, where the Hispanic male entered the east side entrance.
On December 9, 2002 at approximately 10:00 p.m., Bonanca conducted surveillance at 235 Pleasant St. while Khoury and a Detective Costello (Costello) conducted surveillance at 189 Belmont St. Khoury observed the black Honda bearing Mass. Registration 6375YM parked to the rear of 189 Belmont St., Brockton, Mass. At approximately 10:10 p.m. Khoury observed the defendant, Amado Andrades, leave 189 Belmont St., Brockton, Mass, while operating the black Honda bearing Mass. Registration 6375YM. Khoury then followed Amado Andrades to 235 Pleasant St. Khoury observed Amado Andrades walk into the east entrance of 235 Pleasant St. Approximately 20 seconds later Khoury observed the second-floor apartment lights turn on. Approximately five minutes later Khoury observed the second-floor lights turn off and observed Amado Andrades walking back to the black Honda bearing Mass. Registration 6375YM.
On December 10,2002 Detectives Khoury, Costello, McDermott, Morrissey and Keating conducted surveillance at 235 Pleasant St. At approximately 6:30 p.m., Khoury observed the black Honda bearing Mass. Registration 6375YM pull into the driveway to 235 Pleasant St. Khoury then observed passenger Benito Rivera and driver Amado Andrades enter 235 Pleasant St. After approximately 10 minutes Khoury observed both parties come out of 235 Pleasant St. and get back into the same vehicle. At approximately 9:00 p.m. while conducting surveillance at 235 Pleasant St., Detectives Khoury and Costello had a conversation with the first-floor tenant of 235 Pleasant St. The first-floor tenant stated to Khoury that no one lived on the third floor, but that a Spanish man lived in the second-floor apartment. She went on to state that he did not appear to stay there often and he just recently moved in. All detectives again conducted surveillance of 235 Pleasant St. At approximately 9:25 p.m., Khoury observed the black Honda bearing Mass. Registration 6375YM pull into 235 Pleasant St. Khoury then observed the defendant, Amado Andrades, walk into the east side entrance to 235 Pleasant St. At approximately 9:45 p.m., Khoury observed the black Honda bearing Mass. Registration 6375YM pull out of 235 Pleasant St.
On December 14, 2002 at approximately 8:30 p.m. Khoury observed the black Honda bearing Mass. Registration 6375YM pull out of 189 Belmont St., Brockton, Mass, and followed the vehicle to 235 Pleasant St. Approximately 15 minutes after it arrived at 235 Pleasant St., the black Honda bearing Mass.
Registration 6375YM pulled out of the driveway at 235 Pleasant St.
On December 15, 2002 at approximately 9:00 p.m. Khoury and Costello observed the black Honda bearing Mass. Registration 6375YM pull into the driveway at 235 Pleasant St. Ten minutes after the arrival at 235 Pleasant St., Costello observed the black Honda bearing Mass. Registration 6375YM pull out of 235 Pleasant St.
On the same date, the Cl stated it would be willing to make another controlled purchase of cocaine from this organization. The Cl was searched for any type of controlled substance or money. Upon finding none, the Cl was given a sum of currency and told to dial (508) 345-1087. The Cl had a conversation with Davey and placed an order of cocaine with him. The Cl was directed to a specific location in the City of Brockton. The Cl then proceeded to the meet location and waited while being under constant surveillance by Khoury. Approximately 20 minutes after the Cl’s arrival, Khoury observed a brown 1990 Honda Civic bearing Mass. Registration 6167WW pull up to the Cl. Khoury observed the Cl lean into the passenger side window of the car. The Cl then left the area and walked directly over to Khoury and handed him a quantity of suspected crack cocaine. The substance was later field-tested and showed a positive response for cocaine.
On December 16, 2002, Khoury applied for a search warrant for 235 Pleasant St., Apartment 2, which was issued on December 19, 2002. At approximately 5:45 am. on December 19, 2002, Khoury, Sgt. Dennehy, Costello, Stanton and Lonergan executed this search warrant at 235 Pleasant St., second floor. While searching the second-floor apartment, Costello located numerous cut plastic baggies in the ceiling tile above the kitchen. No drugs or contraband were found. The apartment was empty, but Diliddo’s drug-sniffing dog showed a great deal of drug activity in the bathroom, above the ceiling.
II. THE SECOND SEARCH WARRANT
After the search of the second-floor apartment revealed no contraband, Khoury then went to the first-floor apartment and spoke with Maureen Tingley (Tingley) to gather information about the activities in the second-floor apartment. Tingley indicated that a Spanish man rented the second-floor ápartment and that he was rarely there. She stated he usually came twice a day and when he was there, was not there longer than one hour. Khoury then had a conversation with Tingley’s daughter who related that on the day before (December 18, 2002) at approximately 10:30 a.m., her car was blocked in the driveway by the black car driven by the tenant on the second floor. She went upstairs to ask him to move his car and he came walking down from the third floor. Tingley stated that the third-floor apartment was vacant and she did not know that the second-floor tenant had keys to the third-floor apartment. Diliddo then led his dog to the *53 stairs leading to the third-floor apartment at 235 Pleasant St. The dog walked up the stairs and started to bite and paw at the door to the third-floor apartment. Khoury then knocked on the door, but got no response. The lights to the third floor were off.
Based on the above information, Khouiy applied for a second search warrant for 235 Pleasant St., but this time it was for the third-floor apartment. The Affidavit Khouiy used to support the second search warrant mirrored the original Affidavit supporting the application for the first search warrant, except with the inclusion of four paragraphs at the end of the 23-page Affidavit. Based on this second Affidavit, a search warrant for the third-floor apartment was granted. As a result of the search of the third-floor apartment, police seized 471 grams of cocaine, a scale, cut clear bags, scissors, razor blades, plates, a coffee pot and mail.
DISCUSSION I. PROBABLE CAUSE
A. Probable Cause to Search 235 Pleasant St., Second Floor
Defendant argues there was insufficient probable cause supporting the search warrant issued for the second-floor apartment of 235 Pleasant St. Defendant urges this Court to find that there was an insufficient nexus between the criminal activities outlined in the original Affidavit and the second floor. The Court notes that in order for a search warrant to issue, the affidavit must provide sufficient facts to establish a nexus which would allow a detached magistrate to infer that the particular items of criminal activity could reasonably be expected to be found at the location outlined in the search warrant application. See Commonwealth v. Blake, 413 Mass. 823, 829 (1992); Commonwealth v. Saleh, 396 Mass. 406, 411 (1985) (there must be a nexus between the criminal activity and the place searched). See also Commonwealth v. O’Day, 56 Mass.App.Ct. 833, 836 (2002); Commonwealth v. Gentile, 437 Mass. 569, 573 (2002); Commonwealth v. Spano, 414 Mass. 178, 184 (1993).
Defendant looks to the following two factors contributing to his argument: (1) the lack of a sufficient nexus between any criminal activity and the second floor; and (2) the unreliability of several informant’s tips referred to in the original Affidavit. Each of these factors are discussed below.
1. Probable Cause Based on Nexus Between Criminal Activiiy and a Specific Location
Generally, cases finding a sufficient nexus between the criminal activity sought and the place to be searched involve a more direct connection than is the case here. In particular, instances where the police have relied upon a confidential informant’s tip combined with police corroboration of that information have been more specific as to the police actually witnessing drug activiiy occurring at the particular address to be searched. The following cases offer an array of situations where courts of this Commonwealth have found a sufficient nexus between criminal activity and a particular location. See Commonwealth v. Alcantara, 53 Mass.App.Ct. 591, 593-94 (2002) (sufficient nexus established where defendant was known to deliver drugs at place of his choosing away from his apartment, Cl arranged to meet defendant for drug sale, defendant observed leaving his apartment, delivering drugs to CI, and return directly back); Commonwealth v. Soto, 35 Mass.App.Ct 340, 344 (1993) (police observed numerous suspicious short visits to apartment at precise time when informant told officer drugs would be ready); Commonwealth v. Blake, 413 Mass. 823, 828-29 (1992) (informant’s information that defendant was selling drugs from his apartment was corroborated by surveillance of controlled buy); Commonwealth v. Parapar, 404 Mass. 319, 320-21 (1989) (informant supplied detailed information regarding activity at specific place to be searched, police observed numerous persons entering and leaving apartment); Commonwealth v. Hall, 366 Mass. 790, 797-98 (1975) (informant provided reliable tip that drugs were available in the second-floor apartment at particular address).
The above cases are distinguishable from the instant case for several reasons. First, a review of the original Affidavit before this Court confirms that the Brockton Police had ample evidence of drug dealing activities within the City of Brockton, however, there was no evidence linking the suspected drug activity to the second floor of 235 Pleasant St. The Affidavits reveal that Khoury never observed any drug dealing or criminal activity occur on the second floor of 235 Pleasant St. There is no evidence in the original Affidavit that the persons who participated in the controlled buys with the Cl either came from or returned to the second floor of 235 Pleasant St. In fact, the surveillance of235 Pleasant St. never occurred before, during, or after any controlled drug buys and none of the controlled drug buys took place at 235 Pleasant St. Secondly, we note that the Cl did not even allege that the defendant was distributing drugs from the second floor of 235 Pleasant St. In fact, 235 Pleasant St., second floor, was not mentioned at all with respect to any controlled buys of drugs.
In contrast, the Affidavit does disclose that the defendant was seen entering and leaving the second floor of 235 Pleasant St. and that while there, the lights to the second-floor apartment were turned off and on. These facts alone are insufficient to suspect any criminal activity on the second floor. The only facts in the original Affidavit which support any inference of criminal activity occurring on the second floor of 235 Pleasant St. are derived from statements made by an unidentified informant and statements made by Maureen Tingley and her daughter. As is discussed below, these statements fail to satisfy the two prongs of the *54 Aguilar-Spinelli test and are deemed unreliable by this Court.
Furthermore, defendant argues that there was no probable cause to support a search warrant for his alleged residence based upon the surveillance of drug activities in places other than the second floor of 235 Pleasant St. Probable cause to believe that a suspect is engaged in criminal activity does not necessarily constitute probable cause or justification to search his residence. See Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983), citing United States v. Charest, 602 F.2d 1015 (1st Cir. 1979). The mere fact that a particular address was the defendant’s residence does not establish probable cause for a search warrant to issue. See id. at 213. See also Commonwealth v. Olivares, 30 Mass.App.Ct 596, 600 (1991) (no probable cause to search defendant’s residence where there was no specific information in the affidavit tying the defendant’s residence to the illegal drug transactions observed to occur elsewhere). Therefore, defendant argues that just because he allegedly resided at 235 Pleasant St., second floor, absent evidence of any wrongdoing, is not enough to support the probable cause required for issuance of a search warrant.
Based on the foregoing, this Court finds that the evidence before the magistrate did not constitute a substantial basis to believe there was any drug activity occurring on the second floor of 235 Pleasant St. Therefore, there was insufficient probable cause for the issuance of the search warrant for the second floor of 235 Pleasant St.
2. Probable Cause Based Upon the Reliability of Informants
Defendant argues the use of the several informant’s information leading to the support of a search warrant for the second floor of 235 Pleasant St. did not meet the two-prong test set forth in the cases of Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969) (the Aguilar-Spinelli test). The basic question for the magistrate when evaluating an affidavit is whether there is a substantial basis on which to conclude that the criminal activity described is probably occurring at the place to be searched. See Commonwealth v. Upton, 394 Mass. 363, 370 (1985). Affidavits based on information provided by confidential informants are required to inform the magistrate of the underlying circumstances which support both the informant’s basis of knowledge and his reliability or veracity. See Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964); Commonwealth v. Blake, 413 Mass. 823, 826-28 (1992); Commonwealth v. Montanez, 410 Mass. 290, 299 (1991); Commonwealth v. Upton, 394 Mass. 363, 375 (1985). Each prong of the Aguilar-Spinelli test must be separately satisfied. See Commonwealth v. Parapar, 404 Mass. 319, 321-22 (1989). However, if either prong fails, independent police corroboration may make up for a deficiency in either prong. Id. at 322. Corroboration may be based either on police investigation or surveillance, or through interlocking informants’ tips. See Commonwealth v. Russell, 46 Mass.App.Ct. 513, 517 (1999).
a. Reliability of the Confidential Informant
The original Affidavit for the second-floor apartment states that an unknown informant supplied the Brockton Police with information regarding an alleged drug dealing organization operating within the City of Brockton. The informant’s identity remained unknown to the police throughout their investigation. Where the identity of an informant is unknown, reliability must be demonstrated through other factors to conclude that the veracity prong of the Aguilar-Spinelli test is satisfied. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 103-04 (1997); Commonwealth v. Welch, 420 Mass. 646, 652 (1995). Police corroboration of an informant’s detailed tip shows a strong indicia of reliability. See Commonwealth v. Alfonso, 438 Mass. 372, 377 (2003). Based on the foregoing, the tips received by the anonymous Cl here were initially deemed unreliable under the Aguilar-Spinelli test. However, that unreliability was overcome through Khoury’s administration of several controlled buys using this Cl’s information. Therefore, although this Cl initially lacked reliability, the information he provided police was later corroborated thereby satisfying the reliability prong of the Aguilar-Spinelli test.
b. Reliability of the Call-In Tipster
The original Affidavit for the second-floor apartment states that on December 6, 2002, a telephone call was received by Detective Bonanca from an unidentified Hispanic male who allegedly admitted to knowing information regarding the defendant’s drug packaging and stashing activities at 235 Pleasant St. As the Affidavit points out, the unidentified informant stated that he believed the drug dealer to be Jose Mejia, not the defendant, Amado Andrades. In addition, he stated that the alleged drug dealer at 235 Pleasant St. drove a black Honda bearing Mass. Registration 6375YM. The caller did not state that he had personal knowledge of the defendant’s alleged drug dealing activities, nor did he make his identity known to Detective Bonanca. As noted above, where the identity of an informant is unknown, reliability must be demonstrated through other factors to conclude that the veracity prong is satisfied. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 103-04 (1997); Commonwealth v. Welch, 420 Mass. 646, 652 (1995). While detail itself will not establish reliability, it is a factor in the overall assessment of the informant’s reliability. See Commonwealth v. Aarhus, 387 Mass. 735, 744 (1982). Police corroboration of an informant’s detailed tip shows a strong indicia of reliability. See Commonwealth v. Alfonso, 438 Mass. 372, 377 (2003). However, even if the informant’s identity is unknown, the veracity prong can still be satisfied if the informant had previously provided information leading to a *55 suspect’s arrest and conviction. See Commonwealth v. Byfield, 413 Mass. 426, 431 (1992).
In the case before this Court, the unidentified Hispanic male informant failed to provide Detective Bonanca with enough detail to satisfy the veracity prong of the Aguilar-Spinelli test. In fact, the informant provided no information regarding the detail of the defendant at all. What he stated was that he believed the person who was packaging and stashing cocaine at 235 Pleasant St. was Jose Mejia, not the defendant, Amado Andrades. In addition, the car he identified as being involved in the criminal activity was not shown to be owned by the defendant, but rather it was registered to a Noeli Gonzales. Even if he had identified the correct person however, there was still not enough detail regarding the packaging and stashing activities to lead a magistrate to conclude that drug activities were occurring in the second-floor apartment of 235 Pleasant St.
As stated above, when the identity of an informant is unknown, police must satisfy the reliability prong through other means such as corroboration or prior use of the same informant. However, in this case, none of those options were utilized by the Brockton Police. Specifically, there was no independent police corroboration of the informant’s tip. The Affidavit states that the informant told Detective Bonanca that Jose Mejia had an outstanding warrant for trafficking outside of Brockton. This tip was confirmed by a search of the warrant management system, however, Jose Mejia is not a party in this action. Also, there is no indication in the Affidavit that the informant had provided information to the police on a prior occasion which lead to the arrest and conviction of another defendant. Therefore, as to this informant’s tip, this Court has no option but to disregard it as unreliable since it fails to meet the Aguilar-Spinelli test for reliability.
c. Reliability of the Unidentified Tenant
The original Affidavit for the second-floor apartment states that prior to the issuance of the search warrants, the first-floor tenant of 235 Pleasant St. provided a statement to Khouiy that she believed no one lived on the third floor, but that a Spanish man lived in the second-floor apartment. She went on to state that he did not appear to stay there often and he just recently moved in. The Affidavit does not identify the name of the person making the above statements. In this situation, the statements from this unidentified informant cannot be presumed to be reliable because the declarant’s identify is unknown. See Commonwealth v. Alvarez, 422 Mass. 198, 203 (1996). Therefore, this statement is presumed unreliable. Without police corroboration, the statement cannot meet the Aguilar-Spinelli test for reliability and must also be disregarded.
d. Reliability of Named Tenant’s Information
On December 19, 2002 during the issuance of the first search warrant, Khouiy went to the first-floor apartment and spoke with a Maureen Tingley who indicated that a Spanish man rented the second-floor apartment and that he was rarefy there. She further stated he usually came twice a day, and stayed no longer than one hour. Khoury next had a conversation with Tingley’s daughter who stated she saw the second-floor tenant walking down from the third floor. Although these statements are from named individuals rather than from unidentified informants, this Court recognizes that the two-prong test of Aguilar-Spinelli still applies when the informant is an ordinary citizen providing the police with information. Named informants in the Affidavit are presumed to be reliable and the information they provide presumed to be credible. See Commonwealth v. Alvarez, 422 Mass. 198, 203 (1996). However, the information provided by Maureen Tingley and her daughter lack sufficient detail to form a basis sufficient to establish probable cause to support a search warrant. The statements do not indicate that either of them witnessed any criminal activify in either the second- or third-floor apartments. Their statements only state that Maureen Tingley’s daughter observed the second-floor tenant, who was not identified as Amado Andrades, walking down the stairs from the third-floor apartment. She did not state that she saw the defendant inside the third-floor apartment nor that he opened or closed the door thereto. The police provided no photos of Amado Andrades to either declarant for identification purposes. Thus, these statements lack any indicia of reliabilify as the identify of the man walking down the stairs from the third-floor apartment was never identified as the defendant. Because the statements provided by Maureen Tingley and her daughter are unreliable and because there was no police corroboration of the information they provided, the two prongs of the Aguilar-Spinelli test have not been met and these statements must be disregarded.
B. Probable Cause to Search the Third-Floor Apartment
Even if there was probable cause to search the second-floor apartment of 235 Pleasant St., there was insufficient probable cause within the second Affidavit to support the issuance of the search warrant for the third-floor apartment. Before a search warrant can issue, a neutral and detached magistrate must make a determination that there is probable cause for the search. See Commonwealth v. Santana, 411 Mass. 661, 663 (1992). To establish probable cause to search, an affidavit must contain sufficient information for an issuing magistrate to determine there is a “substantial basis” for concluding that the items sought are related to the criminal activify under investigation, and that the items reasonably may be expected to be located in the place to be searched at the time the search warrant issues. See Commonwealth v. Matias, 58 Mass.App.Ct. 231, 232 (2003); Commonwealth v. O’Day, 56 Mass.App.Ct. 833, 836 (2002); Commonwealth v. DeJesus, 439 Mass. 616, 626 (2003). *56 Probable cause for issuance of a search warrant must be shown in the affidavit through sufficient detail of the underlying circumstances “if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.” Commonwealth v. Matias, 58 Mass.App.Ct. 231, 236 (2003), citing Commonwealth v. Reddington, 395 Mass. 315, 325 (1985), quoting United States v. Ventresca, 380 U.S. 102, 109 (1965). When a search is conducted pursuant to a warrant, probable cause must be found only on the facts revealed on the face of the affidavit and any reasonable inferences therefrom. See Commonwealth v. Alfonso, 53 Mass.App.Ct. 279, 280 (2001). In reviewing the four comers of the warrant application, the court may consider only those facts revealed on the face of the affidavit and any reasonable inferences therefrom, and should read the affidavit in an ordinary, common-sense manner, without hyper-technical analysis. See Commonwealth v. Black, 413 Mass. 823, 827 (1992); Commonwealth v. Allen, 406 Mass. 575, 578 (1990); Commonwealth v. Cefalo, 381 Mass. 319, 329-30 (1980). The defendant bears the burden of showing that evidence seized pursuant to a search warrant was illegally obtained. See Commonwealth v. Taylor, 383 Mass. 272, 280 (1981); Commonwealth v. Fancy, 349 Mass. 196, 202 (1965). In addition, an affidavit establishing probable cause to search one of several apartments in a multiple occupancy dwelling will not support the issuance of a warrant to search any or all of the others. See Commonwealth v. Erickson, 14 Mass.App.Ct. 501, 504(1982).
Based on the above authority, probable cause for issuance of the search warrant for the third-floor apartment must have existed independent from any probable cause to search the second-floor apartment. Even if there was sufficient probable cause for a search warrant to issue for the second-floor apartment, only four paragraphs of the 23-page Affidavit relied upon for support for issuance of the search warrant for the third-floor apartment addressed the defendant’s connection to the third floor. There is no nexus between any alleged drug dealing activities on the second floor and the third-floor apartment. The totality of the surveillance activities conducted by police, the information provided by the Cl, and the statements made by Maureen Tingley and her daughter did not indicate that drug activities were occurring on the third floor of 235 Pleasant St.
These four paragraphs state only that Maureen Tingley’s daughter observed the second-floor tenant, who was not identified as the defendant, Amado Andrades, walking down the stairs from the third-floor apartment. She did not state that she saw the defendant inside the third-floor apartment nor that he opened or closed the door thereto. This statement alone cannot form the basis to lead a magistrate to conclude that there was a substantial likelihood that criminal activity was occurring on the third floor nor connect it to the defendant. As noted in Erickson, an Affidavit establishing probable cause to search one apartment in a multiple dwelling building will not support the issuance of a warrant to search any or all of the others. See Commonwealth v. Erickson, 14 Mass.App.Ct. 501, 504 (1982). There has to be an independent basis in the Affidavit such that a detached magistrate could have reasonably inferred criminal activity was occurring in the third-floor apartment. The Affidavit does not support that inference. As such, there was no probable cause for a search warrant to issue for the third-floor apartment.
The Affidavit also states that Diliddo’s drug-sniffing dog bit and scratched at the door to the third-floor apartment. Until a determination has been made that a drug-sniffing dog can detect contraband through a closed door to an apartment, these gestures cannot form the basis for independent probable cause to issue a search warrant absent proof of the dog’s ability to do so. Typically, the case-law supporting the use of drug-sniffing dogs are limited to specific searches. This Court cannot infer that drugs were present in the third-floor apartment because this dog bit and scratched at the outside of the apartment’s door or detected drug activity in the bathroom ceiling of the second-floor apartment. The relevant case-law suggests that when a drug-sniffing dog’s skills are utilized, the dog is directed to detect contraband from a specifically contained area such as a package, compartment in a car or an area inside a dwelling. See Commonwealth v. Pinto, 45 Mass.App.Ct. 790, 792-93 (1998) (reasonable suspicion exists for detaining package to expose it to dog sniff where package in question was heavily duct-taped, hand-addressed to an individual rather than a business, had a fictitious return address and no named sender, and was sent from an airport known to be used by drug couriers); Commonwealth v. Sinforoso, 434 Mass. 320, 324 (2001) (once police dog indicated presence of narcotics in rear of car, police had probable cause to search it); Commonwealth v. Sanchez, 1998 WL 181811, 8 Mass. L. Rptr. 451, 7 (Mass.Super.) (probable cause established in exigent circumstances once a reliable, well-trained narcotics detection dog affirmatively reacted to the box in a way that his handler understood to indicate the presence of contraband); Commonwealth v. Donald, 1994 WL 879941, 3 (Mass.Super.) (seizure of package at airport subjected to dog sniff provided probable cause for warrantless search). The Affidavit does not state that Diliddo’s dog was directed to a specific package or area within the third-floor apartment. Therefore, this Court finds that the dog’s actions in biting and sniffing a door from the outside of a closed apartment cannot form a basis for probable cause for a search warrant to issue for an entire apartment.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress evidence seized by police on December 19,2002 at 235 Pleasant St., third floor, is ALLOWED.